## OMAHA FEED COMPANY V. ARTHUR H. RUSHFORTH.

FILED DECEMBER 20, 1905.   No. 14,036.

1. **Sale: RESCISSION.** If one party to an agreement of sale for the purpose of obtaining credit makes false representations relating to the amount of his assets, or the condition of his financial affairs, and the other party, replying thereon, enters into the agreement to extend credit on the strength of such representations, he may, on discovering the fraud, repudiate the agreement and refuse to carry it into effect.

2. **New Contract.** Where a party repudiates an agreement to extend credit to another because of false and fraudulent representations made in obtaining it, and the agreement is then so changed as to eliminate the provision for credit and to require cash on delivery, the second agreement is not a mere modification of the first but a new and independent agreement, and no new or further consideration is necessary to support it.

3. **Contract: DEFENSE: PLEADING.** Where a party to a contract inserts a provision exempting him from fulfilling because of a condition which may afterwards arise, he must, when sued for a breach of the contract, plead in defense the existence of the condition in order to have the advantage thereof.

ERROR to the district court for Merrick county: JAMES G. REEDER, JUDGE. *Affirmed.*

*W. T. Thompson,* for plaintiff in error.

*John C. Martin, contra.*

DUFFIE, C.

The parties to this action entered into the following agreement: "Clarks, Nebraska, September 3, 1903. This will certify that I have this day sold to the Omaha Feed Company (500) five hundred tons of No. 1 second bottom hay, reasonably free from weeds, and good color, at $7.25, seven dollars and twenty-five cents, F. O. B. Omaha, also (200) two hundred tons of No. 2 hay, same to be reasonably free from weeds, and good color, but coarse hay, at $6.50, six dollars and fifty cents per ton, F. O. B.

Omaha. Same to be delivered from one to two car-loads per day, provided we are able to get cars and the weather permits. Returns for said hay to reach me not later than Tuesday of each week for all hay unloaded."

Rushforth delivered but two cars of hay to the plaintiff under this agreement, and the plaintiff commenced an action against him to recover damages alleged to have been sustained for failure to deliver the full amount stipulated in the contract. The answer of the defendant admitted the making of the agreement, and denied the other allegations of the petition. It contained a counterclaim to the effect that the plaintiff, as a means and for the purpose of procuring from the defendant the credit provision in the contract above set out, knowingly, falsely and fraudulently represented to the defendant that it had a fully paid up capital stock of $50,000 while, in fact, its paid up capital stock amounted to $1,000 only; that defendant, in extending the credit provision of said agreement, relied upon this false and fraudulent representation, and would not otherwise have consented to extend any credit to the plaintiff; that, after the agreement had been executed and after defendant had shipped two car-loads of hay, he was for the first time advised that the representations of the plaintiff were false and that plaintiff did not have a business rating for credit to exceed $500; that, thereupon, he complained to the plaintiff that its credit rating was not as represented in procuring the agreement, and declined to ship to the plaintiff any more hay unless the same was paid for on delivery; that, thereupon, the plaintiff agreed with him that the original agreement should be modified to the extent and effect only that the defendant should ship the hay as provided in the contract, and should draw through the banks for the value of each car-load, so shipped, with a bill of lading attached for each car; that afterwards, and on October 14, 1903, the defendant, in compliance with the terms of said agreement, so modified, shipped to the plaintiff a car-load of hay of the value of $67.70, and attached the bill of lading therefor to a draft

given to the First National Bank of Clarks for said sum of $67.70 upon the plaintiff at Omaha, Nebraska, payable at sight; that the plaintiff refused to accept and pay for said draft, and accept and pay for said hay, so shipped, and has refused to accept the remainder of the hay mentioned in said memoranda agreement, by reason of which he claimed damages in the sum of $339.43. A trial resulted in a verdict in favor of the defendant on his counterclaim in the sum of $5, upon which judgment was entered, and the plaintiff has taken error to this court.

Among others, the court gave the jury the following instruction: "You are instructed in this case that, if you believe from a preponderance of the evidence that on or about the 4th of October, 1903, the contract set forth in plaintiff's petition was by a verbal agreement, then made between said plaintiff and defendant, modified, providing that the plaintiff should pay for all the hay shipped to the plaintiff by the defendant, at Omaha, upon delivery, then and in that case the plaintiff cannot recover herein." And the following instruction asked by the plaintiff was refused: "The court instructs the jury, as a matter of law, that, unless you find that there was some valuable consideration to support the modification alleged by defendant, such modification is null and void, and the defendant cannot claim advantage under it."

The original agreement provides for the shipment of from one to two car-loads a day from and after September 3, 1903. The alleged modification of this agreement was made October 4, 1903, at which date two car-loads only had been shipped. There had been a breach of the contract on the plaintiff's part therefore prior to the making of the second agreement, unless a failure to get cars or the condition of the weather prevented daily shipments from being made. The two instructions above quoted, the one given by the court and the other tendered by the plaintiff and refused, fairly, we think, present the question insisted on by the plaintiff in error, that no valid modification of a contract can be made, after breach thereof, without a new

and further consideration passing between the parties. This may be conceded as the rule, and still, we think, it has no application in this case. It is undoubted law that one may refuse to perform an executory contract procured from him by false and fraudulent representations, and any false representation of a material fact, made with knowledge of its falsity and with intent that it shall be acted upon by another, and which is so acted upon, constitutes fraud. In *Tallon v. Ellison & Sons,* 3 Neb. 63, 74, the court uses the following language:

"The principle is well established, that if a party for the purpose of obtaining credit makes false representations as to his solvency or of the condition of his financial affairs, whereby the other party relying on these statements is induced to sell his goods or part with his property, it is manifestly a fraud on such party."

That the paid up capital stock of a corporation to whom a party is to extend credit for a large amount is a material matter is not a question for dispute. If, as alleged in the defendant's counterclaim, the plaintiff represented to him that it had a paid up capital stock of $50,000 when, in fact, its paid up capital amounted to but $1,000, the representation was a material one. The defendant was privileged, if he saw fit, to refuse to deal with a corporation which had but a small paid up capital stock, and if, as alleged, he was induced to enter into this agreement by the representation that the paid up capital stock was greatly in excess of what he afterwards found it to be, he had a right to refuse to make delivery under the contract. While the plaintiff in error refers to the second contract as a modification of the first, and while the defendant in his pleadings so denominates it, we think that the pleadings as a whole must be construed as setting up facts which show a repudiation of the contract by the defendant, and the making of a new contract, providing for a cash payment on receipt of the hay, to take its place. It is true that the so-called modified contract relates to the same hay and the price to be paid is the same, but the allegation is

that the defendant refused to deliver any more hay "unless the same was paid for on delivery"; in other words, he repudiated the contract and refused to be bound by its terms. This, we think, ended the contract, and whatever agreement was made thereafter was a new and independent agreement, although it related to the same subject matter. Whether the representation relating to the amount of the paid up capital stock of the plaintiff was made, and whether the defendant's refusal to deliver the hay arose from a discovery that such representation was false, if such is the case, were questions of fact to be determined by the jury, and these issues being found in favor of the defendant, there was no prejudicial error of which the plaintiff can complain either in the instructions given by the court or in his refusal of those tendered by the plaintiff.

One other matter, of which complaint is made, should be mentioned although not affecting the result. The defendant offered, and the court received, evidence over the plaintiff's objection tending to show that the condition of the weather was such that only the two loads of hay delivered could be shipped by the defendant after the making of the original agreement and up to October 4, 1903. One of the conditions of the agreement is the following: "Same to be delivered from one to two car-loads per day, provided we are able to get cars and the weather permits." This was inserted in the agreement for the benefit of the defendant. In case he failed to deliver as fast as called for by the contract, he might defend against a claimed breach for failure to deliver, by showing that such failure was in consequence of the condition of the weather or his inability to obtain cars. The general rule is that, where a party claims a right in derogation of a general law, or when his claim is founded upon an exception of any kind, he shall set forth such claim or such exception particularly in his pleading. If the defendant in this case wished to excuse himself for a failure to deliver as called for by the contract, he should have pleaded the existence of the

condition of the contract exempting him from liability; and in the absence of such a plea the testimony should have been rejected. The plaintiff was not required to negative an exception made for the defendant's benefit, and of matters particularly within his own knowledge.

We recommend an affirmance of the judgment upon the grounds first discussed.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.