Mullally v. Haslam.

MICHAEL MULLALLY, APPELLEE, V. GEORGE HASLAM, APPELLANT.

FILED OCTOBER 14, 1921. No. 21689.

1. **Negligence:** INSTRUCTIONS. Record examined, and *held* that the court did not, in instructions Nos. 1 and 6, given on its own motion, and referred to in the opinion, submit allegations of negligence where no evidence was offered in support thereof.

2. **Appeal:** FAILURE TO REQUEST INSTRUCTION. Where the basis of plaintiff's cause of action was the alleged negligent operation by defendant of his car in violation of an ordinance, and where the court's instructions did not specifically point out the particular provisions of the ordinance alleged to have been violated, but did in a general way submit their violation as alleged in the petition, the defendant, having failed to ask specific instructions thereon, cannot, on appeal, complain of the court's instructions.

3. ———: INSTRUCTIONS. Error cannot be predicated upon the giving of an instruction substantially similar to one requested by the party seeking to reverse the judgment. Instructions given by the court on its own motion and those given by the court at the request of the defendant and appearing in the opinion, *held* to present to the jury substantially the same issues.

4. **Damages:** REMITTITUR. Evidence examined, and *held* that, while the verdict is excessive, it was not the result of passion or prejudice, and, if a remittitur be filed in the amount stated in the opinion, the judgment of the lower court will be affirmed in that amount.

APPEAL from the district court for Dodge county: FREDERICK W. BUTTON, JUDGE. *Affirmed on condition.*

*Courtright, Sidner, Lee & Jones* and *Kennedy, Holland, DeLacy & McLaughlin,* for appellant.

*J. E. Daly* and *J. C. Cook, contra.*

Heard before MORRISSEY, C.J., ROSE and FLANSBURG, JJ., DICKSON and TROUP, District Judges.

DICKSON, District Judge.

This case was begun in the district court for Dodge county to recover damages. The plaintiff alleged that the defendant negligently and carelessly ran into and collided with the coal wagon in which he was riding, thereby permanently injuring him. A trial was had to a jury, which resulted in a verdict for plaintiff for $6,000, upon which judgment was entered, and defendant appeals to this court.

It appears that plaintiff was assisting his son in hauling coal to the electric light plant situated on the west side of Main street in the city of Fremont, the son doing the hauling and unloading, and the father loading the wagons from the cars at the railroad track. Access to the light plant was by an alley running east and west and to the south and leading to and from Main street. After delivering the last load of coal, which was about midnight, the plaintiff and his son started for home, traveling the alley from the light plant to Main street, where they turned south along the west side. At this time the defendant was driving to the north on Main street in his automobile, and, at a point where the team and wagon was turned into Main street, the defendant's car struck the tongue of the wagon, knocking down one or both horses, and throwing the plaintiff down in the wagon, injuring him.

Plaintiff predicates his cause of action upon a violation by defendant of certain ordinances of the city of Fremont, as well as the laws of the state. It is charged by plaintiff in his petition that the defendant negligently and carelessly, and in violation of the ordinances and the laws of the state, drove his car along the west side of Main street at a high and dangerous rate of speed, and failed to keep a vigilant watch ahead for other vehicles

Mullally v. Haslam.

which were entering upon the street, and failed to stop or attempt to stop or check the speed of his car in the shortest time and space possible when the defendant saw, or could by the exercise of ordinary care, have seen the team and wagon in time to stop his car and avoid the collision.

The ordinance referred to in the petition and offered in evidence contains many provisions that are not material in the consideration of this case, and only those that bear upon the issues will be noticed. The ordinance provides that vehicles shall be driven in a careful manner, with due regard for the safety and convenience of other vehicles; that vehicles shall keep on the right of the center of the street; that vehicles meeting shall pass to the right; that drivers of motor vehicles shall have their cars under control; that no vehicle shall be operated at a greater rate of speed than is reasonable or proper, having regard to the traffic and use of the highway, or so as to endanger the life and limb of any person, or in any event at a greater rate than ten miles an hour in the congested district, and outside of the congested district no car shall be operated at a greater speed than twelve miles an hour.

Many errors are assigned, but only those presented by the appellant's brief will be considered. It is contended by the appellant in his brief that the court erred in giving instructions Nos. 1, 4, and 6, and in refusing to give instructions Nos. 1, 3, 4, and 5, requested by him; that the verdict of the jury is not supported by, and is contrary to, the evidence, and is the result of passion and prejudice. The assignments of error will be considered in the order named.

The jury are told in instruction No. 3 that the matters contained in instruction No. 1 are taken from the pleadings and are not evidence. By instruction No. 4 the jury were instructed that the burden is upon the plaintiff to prove, by a preponderance of the evidence, that the defendant was guilty of negligence in some way or ways set

out in instruction No. 1, and that such negligence was the proximate cause of plaintiff's injury, if any. By instruction No. 1, the jury were instructed:

"Plaintiff claims the cause of said collision was the negligence of the defendant in operating his automobile in violation of the law and the ordinances of the city of Fremont, and in driving his machine on the wrong side of the street at a high and dangerous rate of speed."

In instruction No. 6 the court instructed the jury: "It is the duty of parties driving vehicles upon the streets to obey the ordinances of the city and the laws of the state with reference to such use of public thoroughfares. And in this case, it was the duty of defendant to obey the ordinances of the city of Fremont with reference to the use of its streets for automobiles, and also the laws of the state and the usual rules of the road. If you find the defendant failed in any or all the above particulars, such fact or facts should be considered by you with all other evidence as tending to prove negligence."

The appellant insists that the court, by these instructions (Nos. 1 and 6) submitted allegations of negligence where no evidence was introduced in support thereof, and cites many decisions of this court in support of this contention. We have no fault to find with the rule announced in these cases; they state the rule correctly. But were allegations of negligence submitted without evidence to support them? We think not. The theory of the plaintiff's case was that the defendant was negligent in driving on the wrong side of the street at a dangerous and excessive rate of speed, and his failure to have his car under control, to keep a vigilant watch ahead, and that he failed to stop or check the speed of his car after seeing the team and wagon, or, by the exercise of ordinary care, could have seen them. The evidence was confined to these issues as nearly as possible in the trial of a case. There was, however, evidence as to the lights on the defendant's car, and other matters pertaining to the car, its occupants, their places of residence, the course of travel before enter-

ing upon Main street, the purpose for which defendant was traveling this street, and many facts preceding and succeeding the collision, not directly an issue in the case or alleged as a ground for recovery. Some of these acts may have been in violation of some provision of the city ordinance or laws of the state, but no recovery thereon was sought either in the pleadings or the evidence; and, while these were not specifically eliminated by the court in its instructions to the jury, they were not presented as issues. The basis of plaintiff's cause of action was the alleged operation by defendant of his car in violation of the ordinances and the laws of the state; and, while the court's instructions did not specifically point out the particular provisions of the ordinance alleged to have been violated, yet the instructions did, in a general way, submit their violation as alleged in the petition, and the defendant cannot now complain, he having failed to ask specific instructions thereon. *Olmsted v. Noll*, 82 Neb. 147.

Again, before a reversal could be had for submitting allegations of negligence where no evidence was introduced in support thereof, it must appear that the jury were misled in their consideration of the facts of the case. *Mannion v. Talboy*, 76 Neb. 570. Instructions must be considered as a whole. A consideration of the instructions given by the court on its own motion in connection with those given at the request of the defendant leaves him without complaint.

The following instruction (No. 6) was given by the court at the request of the defendant: "You are instructed that unless you find the defendant guilty of negligence, in whole or in part, as charged in his petition, then your verdict must be for the defendant, and the burden is on the plaintiff to prove, by a preponderance of the evidence that the defendant was negligent; and that such negligence was the proximate cause of plaintiff's injury, and that plaintiff sustained injuries as a result thereof."

And, again, the court was requested by defendant and gave instruction No. 7, which reads as follows: "You are instructed that certain ordinances of the city of Fremont have been introduced in evidence and as to these you are instructed that the violation of such ordinances, if you find there was, does not amount to negligence as a matter of law, but is a fact to be considered, together with all the rest of the evidence in the case, in determining whether the defendant exercised care."

By these instructions the defendant presented to the jury substantially the same issue as stated by the court in its instruction No. 6, and thereby adopted and approved the theory of the court, and, having done so, he cannot now complain. Error cannot be predicated upon the giving of an instruction substantially similar to one requested by the party seeking to reverse the judgment. *Jonasen v. Kennedy*, 39 Neb. 313. The complained-of instructions, when considered with those given by the court on its own motion, fairly presented to the jury the issues as made by the pleadings and the evidence and are far from being prejudicial to the defendant.

Did the court err in refusing to give instructions Nos. 1, 3, 4, and 5, requested by defendant? Instruction No. 1 was a peremptory instruction to find for the defendant. By No. 3, the jury are instructed that, as to the allegation that the defendant was operating his car at a dangerous and excessive rate of speed, they should find for the defendant. By No. 4, the jury are instructed that, as to the the allegation that the defendant failed to keep vigilant watch ahead, they should find for the defendant. And by No. 5, the jury are instructed to find for the defendant on the allegation that the defendant failed to stop or attempt to stop or check his speed and avoid the collision. The giving of instructions Nos. 3, 4, and 5 would have eliminated every question of negligence alleged in the petition, other than the allegation that the defendant was negligent in traveling on the wrong side of the street. As to whether the defendant was driving at a dangerous

rate of speed, and whether he was looking ahead, and whether he had his car under control, and whether he failed to stop his car when he discovered the presence of the team and wagon in the street, or by the exercise of due care he could have discovered them, were questions of fact for the consideration of the jury, and are largely dependent upon the part of the street he was traveling upon and the rate of speed. To a great extent, they are dependent upon each other, and not subject to separation, and must be considered together. These requested instructions presented to the court the sufficiency of the evidence on the issues thus presented. As to these issues, the evidence was conflicting and it was for the jury to pass upon them under proper instructions. The plaintiff's son, the driver of the team, testified that the defendant's car struck the wagon tongue, knocking down both of his horses; that this happened as he was driving on the street and just as the horses stepped on the pavement, the hind wheels of the wagon being on the sidewalk; he says he noticed the car one-half block away (190 ft.) to the south, about the middle of the street, and that he just let the wagon drop down on the street and turned the horses south and close to the curb; that the car was traveling 30 miles an hour; that when it struck the tongue of the wagon it drove the wagon back to the curb, knocking down both horses, one falling back under the wagon, the other falling out on the street, the tongue being pulled over him; that the tongue was driven into the car, and that fire flew out of it and glass fell on the street; that he turned the team as fast as he could after he saw the light of the approaching car; that the car stopped 100 feet from the place of collision; that the first thing he did after he saw the car approaching was to jerk the horses around to the right; that he got them to the curb, the right-hand horse having his hind feet against it; that when he came out of the alley he looked first to the north, and, just as the horses were going down the slope, he noticed the lights

from a car coming from the south on the west side of the street.

The plaintiff called as a witness an employee in the Monich garage, which was across the street from the place of collision, who testified he heard a crash; that he saw the defendant's car up the street in the middle or west of the middle of the street; that the hind wheels of the wagon were on the sidewalk and the front wheels in the gutter, and the horses were swung sharp to the right over against the curbing. An employee of the electric light plant testified that about 12:30 a. m. he was sitting by the side door, and a coal wagon had just passed; a few minutes later he heard a terrific smash; that it frightened his wife; that he opened the door and looked out and saw the back wheels of the coal wagon on the sidewalk, and noticed the left-hand horse down on the pavement. The owner of the electric garage, where the defendant's car was taken, testified that he saw the defendant's car after the collision; identified the radiator in court; said that the hood of the engine was wrinkled up "some awful bad;" that the main leaf of the spring was doubled back, letting the front wheel slide back and jamming the bolts that held the spring to the front axle; that the front lights were tipped back, smashed completely; that the wheel struck something, evidently, and that enough weight came on it that doubled the spring, kind of put a kink in it; that the front axle was out of line from four to seven inches, so it was impossible to steer.

The defendant testified that from Military avenue he was driving principally in the middle of the street; that he slowed up a little at the Cronin residence (this was on the west side of Main street and fronting Main street), as he thought of putting one of the occupants of the car out there, but that he decided to go and put her down coming back; that he saw nothing of the team until it was possibly four or five feet away; that he was then traveling twelve miles an hour; that he put on the brakes and turned to the east; that by the time he struck the

Mullally v. Haslam.

pole of the wagon he was going not more than half that rate. The defendant's stenographer was called by the defendant and testified that she rode in the front seat of the car; that she did not notice the team until they were within two or three feet of it, and that she thought they were in about the center of the street; that she put her hands up to her face, being afraid of glass from the windshield, and defendant made a quick turn to the right and stopped the car; that the tongue went into the radiator, and the collision knocked one of the horses down. The other two occupants of the car were ladies, riding in the back seat. They say they saw nothing until they heard the crash. One testified that she was looking west towards the Cronin residence, where she lived, at the time of the collision, and that the car was traveling in about the middle of the street.

As to whether the defendant was driving on the wrong side of the street, and as to whether he was traveling at a high and dangerous rate of speed, and as to whether he had his car under control, were disputed questions of fact and properly for the consideration of the jury; and for the trial court to have instructed the jury as requested by the defendant would have been error. The rule in this state is: "Where the facts are disputed, it is solely the province of the jury to determine the same; and, whether the facts be disputed or undisputed, if different minds might honestly draw different conclusions from them, the case is properly left to the jury." *Ogden v. Sovereign Camp, W. O. W.,* 78 Neb. 804, 806.

From a careful examination of the evidence in this case, we are convinced that the trial court did not err in refusing to direct the jury to return a verdict for the defendant, and that the evidence was sufficient to sustain a verdict for the plaintiff. "A verdict will not be set aside on the ground of want of sufficient evidence to support it, unless the want is so great as to show that the verdict is manifestly wrong." *Sycamore Marsh Harvester Co. v. Grundrad,* 16 Neb. 529.

This leaves for consideration the question, Is the verdict excessive and the result of passion or prejudice? That the plaintiff sustained numerous minor injuries from which he recovered is not questioned, leaving no permanent injury other than to his shoulder. The extent of his injuries was fully presented to the jury by proper instructions. His physician testified that his permanent injury was a fracture of the coracoid process of the left shoulder, impairing the strength and limiting the action and use of his arm, and that he was also permanently affected with hysteria resulting from the injury to his shoulder.

The plaintiff is a laboring man, 65 years of age, with an expectancy of 11 years, depending upon his day's labor for a livelihood. He testified that he had no use of his left arm. At the time of the injury he was earning, and had been for some time, $7 to $10 a day helping his son in delivering coal to the light company. The record is silent as to his occupation prior to his coming to Fremont about a year before, except for a short time he drove a team for Swift & Company in Sioux City, and before that he was engaged in farming. We must take judicial notice of the change of the times. At the time of the injury, as well as at the trial of the case, labor of all kind was commanding the highest price in the history of our country. This man had been and was engaged in the very hardest kind of manual labor. It is not reasonable or fair to presume that he could continue to do so the remainder of his expected days. While the verdict of the jury was much more than would compensate the plaintiff for the damages sustained, yet we do not think it was the result of passion or prejudice, but rather due to the times and conditions existing at and before the trial—the seeming little value placed upon the dollar. The plaintiff is entitled to be fully compensated for all damages sustained, and we are convinced that, under the evidence and the changed conditions of the time, $4,000 will fully compensate him for all damages suffered. And if he will, within 20 days

from the filing of this opinion, file a remittitur in this court of $2,000, the judgment, so reduced, will be affirmed; otherwise the case will be reversed and a new trial granted.

AFFIRMED ON CONDITION.