IN RE ESTATE OF IDA MAY ALTON.
L. W. McDONALD, EXECUTOR, APPELLEE, v. RALPH ALTON CRESSLER, APPELLANT.

FILED FEBRUARY 21, 1935. No. 29166.

*Albert M. Seff, George W. Koehn* and *Julius D. Cronin*, for appellant.

*Frank S. Howell, Fred A. Wright, Thomas J. Kennedy* and *G. A. Farman, Jr., contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and CHASE, District Judge.

Day, J.

This is an appeal from the judgment of the district court for Brown county confirming the judgment of the county court allowing the probate of the proffered will of Ida May Alton, deceased. The contestant alleged, first, that the said document was not the will of Ida May Alton, deceased, because of undue influence having been exercised and, secondly, that at the time of execution Ida May Alton was not mentally competent to make a will. Upon the trial the court withdrew the issue of undue influence from the consideration of the jury and submitted only the question of the mental competence of Ida May Alton. The jury returned a verdict in favor of the will. This appeal presents only two matters for our consideration and determination: First, the sufficiency of the evidence to require a submission to the jury of the issue of undue influence; and, secondly, the alleged misconduct of a juror as grounds for a new trial.

The contestant is a nephew of deceased, 47 years of age, who had not seen his aunt for 30 years prior to her death. Ida May Alton lived the last 20 years, of her life with a sister, Sarah, and a brother, Will, in Norfolk, Nebraska. The nephew never corresponded with the deceased or the aunt and uncle who made up the household. He heard indirectly through relatives about 27 years ago. He heard of the death of Ida May Alton through an attorney, whereupon he contested the will.

The will, the last of a series of five executed by the deceased, left the property to those who had been close friends to her and her brother for many years. Most, if not all, of the property had been left to deceased by her brother. The person contestant alleges exerted undue influence over deceased to procure the will was Mrs. Bessie McDonald, a friend and neighbor. Mrs. McDonald received nothing under the will except some personal effects and furniture. There is no evidence tending to prove that any other beneficiary had anything to do with the execution of the will. The record establishes that the deceased

made her first will in December, 1929, and the last, the one involved herein, in May, 1931. These wills were prepared by the attorney who had assisted her in the probate of her brother's estate. The wills were substantially the same, in that each expressed the intention to leave nothing to her nephew, the contestant here, and left the property to about the same friends. The occasion for the execution of this last will was a new baby in a family whose children were beneficiaries and the testatrix wished to take care of this child. The contestant relies upon the testimony of the witnesses, LaVerne Fridley and Naomi Nordwick, as most favorable to his claim. An examination of the record as well as the abstract of evidence in contestant's brief reveals that this testimony by women employed by the testatrix to care for her falls far short of tending to prove that Mrs. Bessie McDonald or any one else exercised undue influence over the testatrix. The evidence adduced by the contestant does not establish undue influence, nor facts and circumstances from which a jury could infer such undue influence. The evidence does not bring this case within the rule announced by this court in *In re Estate of Noren,* 119 Neb. 653.

To be specific as to the established facts, it is said that Mrs. Bessie McDonald said upon occasion that the testatrix could will her certain articles about the house; that she called upon her frequently; that she took her riding Sundays and rendered other attentions not unusual for an old friend and neighbor. There is no evidence that Mrs. McDonald was present at the time of the execution of any of the wills or that she made any suggestions which were incorporated therein. The attention Mrs. McDonald gave the deceased was only the attention the testatrix would have expected from an old friend whom she had made a beneficiary under her will. There is testimony that the deceased told several other parties than the beneficiaries that she was leaving them something in her will. The fact that the will provided nothing for them is urged as proof that undue influence was exerted. It is not such

proof. It is not unusual for old people to tell many people that they will will them something. It is one method old age sometimes adopts to secure attention from younger generations. Even assuming that the testatrix intended to do so but forgot or neglected to make the promise effective, a validly executed will is not set aside thereby.

The burden of proving that the will resulted from undue influence is on the contestants, and the mere suspicion of undue influence on testatrix is insufficient to require submission of the question to the jury. *In re Estate of Dovey,* 101 Neb. 11; *In re Estate of Wilson,* 114 Neb. 593.

This testatrix was not mentally incompetent to make a will; the will was not an unnatural one; no confidential advisor was actively concerned in the execution, and there is no evidence of undue influence or of facts and circumstances from which a reasonable inference of undue influence could be drawn. *In re Estate of Noren,* 119 Neb. 653. The trial court was not in error in withdrawing the question of undue influence from the consideration of the jury.

The verdict of the jury on the question of the mental competence of the testatrix to make a will is assailed because of misconduct of a juror. The misconduct of the juror is exhibited by an affidavit of one of the attorneys for the contestant about a statement of a juror, made after the verdict was returned, and by an affidavit of another juror. These affidavits were considered by the trial court on the motion for new trial. The contestant seeks to impeach the verdict by the affidavits of jurors.

"The testimony of jurors will not be received to impeach or avoid their verdict in respect to matters which essentially inhere in the verdict itself, as that they agreed to the verdict from motives of ill-will toward the unsuccessful party or a third party supposed to be directly interested in the controversy, or other matters resting alone in the breasts of the jurors." *Johnson v. Parrotte,* 34 Neb. 26.

"Affidavits of jurors that during their deliberations a

juror said he had made up his mind before the case had ended are incompetent for the purpose of impeaching the verdict." *Trimble v. State,* 118 Neb. 267.

"Matters inhering in the verdict of a jury cannot afterward be attacked by affidavits of the jurors." *Iman v. Inkster,* 90 Neb. 704.

It should be said in fairness to the juror that the affidavits, if true, establish that he said that it was embarrassing for him to decide upon a verdict. Perhaps it would have been better had another served upon the jury. This juror did agree to the verdict returned, even though it is charged that he refused to participate in the discussion preliminary to reaching a verdict. There is no misconduct which justifies a reversal of the judgment.

AFFIRMED.