CHARLES F. COX, APPELLEE, V. GREENLEASE-LIED MOTORS,
APPELLANT.
277 N. W. 819

FILED FEBRUARY 18, 1938.   No. 30131.

*Gaines, McLaughlin & Gaines* and *Harold A. Palmer*, for appellant.

*Rosewater, Mecham, Shackelford & Stoehr, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and WILLIAM A. DAY, District Judge.

GOSS, C. J.

This is an appeal from a judgment against defendant for $1,000 for damages for a breach of warranty. Plaintiff alleged that, on February 9, 1935, he purchased a La Salle sedan from defendant at an agreed price of $1,805, paying $1,250 in cash and receiving $555 credit for his trade-in Cadillac car. He alleged oral misrepresentations by defendant's salesman to the effect that the car was of the finest workmanship and material; that its motor would without strain propel it at more than 90 miles an hour, that it would climb any hills found on main highways in this section without laboring and without loss of speed and power; that it had rapid acceleration and pick-up, and that it was mechanically perfect in all respects. Plaintiff further alleges that he relied on and believed such representations and warranties and was thereby induced to purchase the car on the terms before stated; that immediately thereafter the car was found not as represented and warranted; that the starting mechanism on the car failed to start the car; that the car lacked power and could not be run at any reasonable rate of speed and could not climb ordinary hills without losing power to such an extent that it was necessary to shift from high to intermediate and some times to low gear; that the carburetor was defective and out of adjustment and could not be adjusted in such a manner

that the motor would deliver reasonable power in operation; that the body developed squeaks and rattles, that the doors did not fit and would not keep out drafts, that the top and windshield were not waterproof, but, when it rained, it would leak and run down upon the occupants of the car, that the lights on the dash and instrument board and the speedometer and windshield wiper were defective and did not operate properly, and that the motor of the car became noisy and out of adjustment; that because of these defects plaintiff was not able to drive the car satisfactorily, and that the car was not as warranted and represented.

Plaintiff further alleges that, upon discovering such defects, plaintiff notified defendant, offered to return the car, and stopped payment of the check which he had given for its payment and demanded a return of his own Cadillac car, but that defendant, in order to induce plaintiff to keep the La Salle car, represented and warranted to plaintiff that the car was merely in need of minor adjustments, which it could and would make without delay, and that, if plaintiff would keep the car and continue to permit the defendant to make such adjustments as were necessary from time to time, defendant would live up to defendant's warranty and put the car in exactly the condition in which it was warranted to be at the time the car was sold. Plaintiff alleges that the adjustments did not eliminate the defects, alleges damages and prays for the same in the sum of $1,100.

Defendant answered, denying the existence of any warranty beyond what is claimed to be the usual warranty of the factory producing the automobile, and alleges that the La Salle automobile was in all respects as represented and warranted and that defendant has at all times been ready and willing to make good any defects that might exist therein; that defendant did make several minor repairs and adjustments as are frequently necessary in breaking in a new car, and outside thereof there was nothing wrong with the car, and defendant asks that plaintiff's petition be dismissed.

The first assignment of error is that the court failed to sustain defendant's motion for a directed verdict at the close of all the evidence. There was ample evidence to support the allegations of the petition as to the defects in the car and that it did not come anywhere near the representations of Mr. Fraser, the salesman who sold the car and had many subsequent dealings with plaintiff in relation thereto. The car was delivered to plaintiff at his home on Saturday, February 9, 1935, and was kept overnight in a heated garage. The next morning plaintiff tried unavailingly for 15 minutes to start it. Defendant called Mr. Fraser, who came with a mechanic and succeeded in getting the car started. The next morning witness tried to start the car and it would not start. He called a cab and was taken to his office and called defendant and notified the bookkeeper not to attempt to cash the check as he was stopping payment on it because the car was unsatisfactory. He called the bank and stopped payment. Mr. Fraser and another man from defendant's office came to plaintiff's office and induced him to keep the car on statements that defendant was responsible and would guarantee that the car would be made perfect or they would give plaintiff a new car or call the deal off. He finally told them that, if defendant would so guarantee the car, he would rescind the order to stop payment on the check and let it be paid, which he did. The representations at the time the car was sold were testified to both by Mr. and Mrs. Cox. Those on the following Monday were testified to by Mr. Cox and were substantially as admitted by Mr. Fraser, who was a witness at the trial. The record is replete with instances in which the car was defective. The car would not start and plaintiff had numberless disappointing and in some instances humiliating experiences in that respect. The doors did not fit, would not keep out the cold air, and had to have windstrips put in; the roof and windshield permitted rain to come into the car when it rained and came down on the occupants and discolored the upholstery; the speedometer got out of order and never could be entirely

remedied; the spark plugs had to be changed twice in the first 6,000 miles and a new generator had to be installed in about the same distance. There was testimony that the car was in the shop for repairs many times. Plaintiff wrote several letters to defendant corporation but never received any answer. Defendant's assistant manager admitted the receipt of two of those letters. We think the evidence was sufficient to go to the jury.

It is true defendant claims that it did not make the warranties relied on by plaintiff, but the evidence shows that its salesman Fraser made the warranties and as agent for defendant induced plaintiff to purchase the car in the first instance and to keep the car on the promise that its defects would be made good. Plaintiff relied on the promise.

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon." Comp. St. 1929, sec. 69-412.

It is assigned as error that the court erred in permitting plaintiff to testify to the value of the car at the time of purchase. It is settled in this state beyond the need of citation of authorities that the owner of personal property is qualified by reason of that relationship to give his estimate of its value.

The jurors, while considering the case, requested the bailiff to ask the court if they could return a verdict for plaintiff for less than $1,000, and when the bailiff returned he stated that the court said for the jury to read the instructions and, if they did not understand them, the court would give further instructions, but to do so would necessitate the calling in of attorneys for plaintiff and defendant. There was no further request from the jury so far as the record shows. This alleged refusal to assist the jury is assigned as error. We see no error there.

Error is assigned because the court refused to consider and respect the affidavits of eleven of the jurymen to the effect that they understood the instructions to require

them, if they found for plaintiff, to fix his damages at $1,000. This is said to refer to instruction No. 7, though there is nothing in that instruction, nor in any other, that fixes the damages at that or any other amount. That instruction plainly states the measure of damages, if any, as the difference between the value of the La Salle car, when delivered, and its value if it had been as warranted. Defendant now seeks to have the jury impeach their verdict by these affidavits. This may not be done.

"Affidavits of jurors may not be received to contradict anything essentially inhering in the verdict itself." *De Porte v. State Furniture Co.*, 129 Neb. 282, 261 N. W. 419. See *In re Estate of Alton*, 128 Neb. 411, 258 N. W. 871.

By instruction No. 7 the court told the jury that the measure of damages in the case of a breach of warranty of quality is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty. This embodies the calls of subdivision 7, sec. 69-469, Comp. St. 1929, and was a correct statement of the law.

Defendant argues error in that, because there was no notice or advance threat of a claim for damages, plaintiff cannot recover. In the case of *Nashua River Paper Co. v. Lindsay*, 249 Mass. 365, 144 N. E. 224, the court said: "The statute does not attempt to define the kind of 'notice' of the breach of warranty that must be given within a reasonable time, in order to hold the seller liable. * * * Without attempting to lay down a general rule of construction as to the substance of the notice of the breach of warranty which the buyer must give, after acceptance of the goods, in order to hold the seller liable, it seems clear that it must refer to particular sales, so far as that is practicable; that it must at least fairly advise the seller of the alleged defects, and that it must be such as to repel the inference of waiver. Although it need not necessarily take the form of an express claim for damages or threat of such, it ought to be reasonably inferable therefrom that the buyer is asserting a violation of his legal rights."

In the present case defendant was promptly and fully advised of the facts that the car did not measure up to the warranties and that plaintiff had no intention of waiving his legal rights. Notice of plaintiff's exact claim for damages would have served no purpose, for defendant did not even answer his letters of complaint and the numerous telephone calls which the evidence shows he made complaining about the car.

Defendant argues that the court erred in excluding (as it did except for the purpose of affecting the credibility of plaintiff) the order signed by plaintiff for the car. Defendant wished to argue to the jury and here that the order contained a printed statement that the automobile "is sold under the standard warranty of the manufacturer and the purchaser hereby agrees that no other warranties have been expressed or implied." This was in finer print than the main part of the contract and was off to one side from the order, which had been filled in with ink to show the description of the car and the price and the allowance for the trade-in. The court admitted the exhibit only for the purpose of affecting the credibility of plaintiff, who had testified to express oral warranties made by or on behalf of defendant. In its answer defendant had not pleaded this printed contract in relation to the warranty, and therefore plaintiff claimed, and the trial court held, it was not within the issues. The purpose for which defendant seeks to use it is to negative the express oral warranties claimed by plaintiff to have been made when he purchased the car.

In *Omaha Feed Co. v. Rushforth,* 75 Neb. 340, 106 N. W. 25, it was said: "Where a party to a contract inserts a provision exempting him from fulfilling because of a condition which may afterwards arise, he must, when sued for a breach of the contract, plead in defense the existence of the condition in order to have the advantage thereof."

The oral warranties were all made and the check had been received in payment of the car before this order was signed.

In *Edgar v. Breck & Sons Corporation,* 172 Mass. 581,

52 N. E. 1083, a suit involving a warranty in the sale of bulbs, Judge Holmes said: "The contract was made when the parties made their oral agreement. It does not matter that at that time it was not evidenced by a memorandum in writing. * * * The general printed warning on the billhead that the defendant did not warrant seeds could have no effect unless it led to the inference that the old contract had been rescinded and a new one substituted by mutual agreement." See *Ward v. Valker*, 44 N. Dak. 598, 176 N. W. 129, to the same general effect.

It is urged by defendant that the verdict and judgment are excessive. The argument is based on the claim that plaintiff had for a long time the use of a new car of a high class. But this argument loses sight of the almost continual trouble and annoyance to which plaintiff was put the while defendant was seeking vainly to put the car in satisfactory shape. The jury heard all the evidence and fixed the damages within authorized limits. We cannot say as a matter of law that they are excessive. The judgment is

AFFIRMED.