ANGELINA BONACCI, APPELLEE, V. THOMAS CERRA, APPEL-
LANT.

279 N. W. 314

FILED APRIL 26, 1938.  No. 30240.

Crofoot, Fraser, Connolly & Stryker, for appellant.

O'Sullivan & Southard and George H. Merten, contra.

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

EBERLY, J.

This is an action under the Nebraska automobile guest statute. Angelina Bonacci, as plaintiff, seeks a recovery for personal injuries inflicted upon her by the defendant, Thomas Cerra, while she was a guest riding in an automobile then operated by him. It is alleged the injuries thus sustained by plaintiff resulted from gross negligence of defendant in operating his automobile. In his answer defendant denies the commission of negligence, and alleges that the injuries in suit were the result of an accident wherein the automobile in which plaintiff was riding left the highway because of a punctured right rear tire, and that the defendant was guilty of no gross negligence in connection therewith.

This is a companion case to Antonio Bonacci v. Thomas Cerra, ante, p. 476, 279 N. W. 173. Angelina and Antonio are wife and husband, and the two cases referred to arose out of the same accident. However, as finally presented to the triers of fact, in issues and proof these cases are materially and substantially different.

As bearing on the real interests of the parties to this litigation, it may be said that Bonacci and Cerra were friends in the land of their nativity. Both migrated to this country some years ago. Here the friendship formerly existing was renewed and continued. On August 4, 1935, Mr. and Mrs. Bonacci, as the invited guests of Mr. and

Mrs. Cerra, left Omaha with the latter on a vacation trip to Colorado. Mr. Cerra furnished the car, the necessary gas, oil and maintenance for the car, at his own expense. On August 15, 1935, about 1 o'clock p. m., on the return trip, in Cerra's automobile then driven by him, an accident occurred about five miles east of Grand Island on U. S. Highway No. 30. No other automobile was involved.

The following is an excerpt from the bill of exceptions, viz.: Thomas Cerra testified, in answer to questions propounded by his own counsel: "Q. Of course, you are protected by liability insurance, are you? A. Do you want me to say that? Q. I want to know. You are sworn to tell the truth, Mr. Cerra? A. Well, I am protected; if you insist on me saying it, I will say I am protected by liability insurance. Q. And I am the attorney for the insurance carrier? A. You are." This evidence was received without objection.

The petition, originally filed in this case on October 18, 1935, charged the negligence of the defendant substantially in the identical manner as set forth in *Bonacci v. Cerra, ante,* p. 476, 279 N. W. 173, viz.: That the defendant operated said automobile at an excessive and illegal rate of speed, to wit, about 70 miles an hour, and in such a grossly negligent, careless and reckless manner that he drove said automobile *off the right side of said highway pavement, then drove said automobile back onto said highway pavement to the left of the center of said highway pavement, then drove said automobile to the right side of the center of said highway pavement and then drove said automobile* to the left side of said highway pavement across the center thereof, and then in a grossly negligent, careless and reckless manner drove said automobile off said highway pavement upon and over the left dirt and gravel shoulder along said paving, etc. Further, *that from the point where defendant's automobile first left the pavement to the point where said automobile overturned was approximately 150 yards,* etc.

It also appears that the petition in *Bonacci v. Cerra, ante,* p. 476, 279 N. W. 173, and the original petition of plaintiff in the instant case were prepared by the same

attorney, substantially at the same time, after a consultation with Antonio Bonacci and Angelina Bonacci, his wife, the plaintiff herein, in which he was aided by an unnamed interpreter whose ability is not questioned by the record. These petitions so drawn were sworn to by these parties on the 15th and 17th days of October, 1935, respectively, and on the 16th and 18th days of October, 1935, respectively, the same were filed. It may be said that the petitions thus prepared are not substantially inconsistent with the depositions of these parties taken on February 29, 1936.

In speaking of the movement of the car at the time of the accident, Antonio Bonacci in his deposition says, in part: "Q. How far did it travel after the trouble started? A. I couldn't tell. Q. Well, did it travel a distance of a hundred feet after the trouble started? A. Maybe it was more or less; I don't remember. Q. It may have been more than a hundred or may have been less than a hundred feet? A. Yes; I can't remember. Q. You knew when the car started to weave that way, and then all of a sudden it was all over; is that it? A. Yes."

Angelina Bonacci was present when her husband's deposition was taken, and in her deposition her first answered question was: "Q. Well, Mrs. Bonacci, your testimony is just the same as your husband's, isn't it? A. I guess it is." As to the movement of the automobile at the time of the accident, she said, in part: "Q. Do you know what went wrong with the car, or what happened? A. No, sir. I just saw when the car went like this and like this, you see (indicating). Q. Well, it just went on the paved road and then went off the left side of the paved road? A. Left side. Q. It didn't go out on the right shoulder and then come back or anything like that? A. No; just like this (indicating). Q. Well, how far did it go as it was weaving that way, as it was going back and forth, was it a hundred feet? A. I can't tell you. Q. Was it a hundred feet, or less than a hundred feet? A. I can't tell you about that; I ain't that smart to know; I don't know."

It should be noted that the depositions were taken with-

out the aid of an interpreter; that no reference was made therein to the removal of the right hand of the driver from the steering wheel, or the turning of his face to the right and his eyes from the road. Further, the reaching for a cigaret, or the lighting of the same, were not mentioned, and neither was any reference made to a speedometer, but all statements as to speed were mere estimates of the deponents.

The facts of the accident here in suit have been presented to trial juries three times. The first was in the trial of the case of Antonio Bonacci v. Cerra, resulting in a verdict and judgment for the defendant. The second was the presentation of the case of Angelina Bonacci v. Cerra, the first trial of which resulted in a verdict for the defendant, as to which a motion for new trial was sustained by the trial court, and the second trial resulted in a verdict and judgment, from which this appeal is prosecuted. Prior to the second trial plaintiff's petition was amended by changing the rate of speed alleged from 70 miles an hour to 80 miles an hour, and striking therefrom all portions thereof as hereinbefore italicized. The testimony as received in each of the three cases is embraced in the bill of exceptions allowed in the instant case.

In the first trial the negligence upon which a claim to recovery was based was excessive speed. The speedometer then appears for the first time, and the rate of speed, a matter of estimate when Bonacci's deposition was taken, becomes definite and fixed. He now testifies that he observed the speedometer just before the accident and it showed 80 miles an hour. Defendant Cerra, at the trial of Antonio Bonacci's case, testifying as to the accident, said: "It just happened that the car got out of my control, and went over in the ditch all at once. * * .* Well, the first I know I had my hands on the wheel, and the car turned over on the side, that is all; that is all I remember."

Mrs. Bonacci was present at this trial but did not testify. Bonacci and wife were at this time represented by the same attorney. Some three days after this trial was

concluded, for the first time she informed her attorney (as she later testified) that after requests by her, through her husband, to Cerra that the latter drive slower, the car went off the paving on the left side of the road, and went into the ditch; that immediately before this happened Cerra, the driver of the car, turned his head to the right, looked at his wife seated in the front seat beside him, took his right hand from the steering wheel and handed something to his wife, and that is the way he lost control of the car.

Antonio Bonacci also so testified for the first time in his wife's case. It was then that, in reply to a question as to what he saw Cerra, the defendant, do just before the accident, he answered: "Well, I saw Mr. Cerra take his right hand from the steering wheel and reach something to his wife and then he lost control of the car and it go to the left side into the ditch." Further, that at this time Cerra "had his eye off the road and was looking at his wife." This witness did not so testify in the trial of Antonio Bonacci v. Cerra.

The testimony of Cerra, the defendant, also appears to have changed materially in the course of the litigation. As to speed, he originally testified, on direct examination, that at the time of the accident the automobile was traveling "about fifty-five or sixty, I guess;" on cross-examination, "I will estimate about fifty-five to sixty miles." In the present case his testimony is: "Q. What caused you to lose control of the car? A. Well, when the occurrence of the accident, you know, Your Honor, as you go usually on the road, usually anybody,—the gentlemen of the jury they probably know also,—you might have a smoke or something. Now, I asked my wife to give me a cigarette and as I lit the cigarette the accident occurred and then I saw for certain I lost control and no way for me to avoid the accident. Q. That is, you reached over with your right hand for the cigarette? A. Yes; my right hand. I had the left hand on the wheel. Q. And your right hand off? A. The right hand was off, yes. Q. And at that time what speed

were you making? A. Well, the average; you know, I go pretty speedy, sixty, seventy, and sometimes seventy-five, I don't recall, but at the moment I just don't recall the rate of speed I was going, but I was going pretty fast, but I don't recall the rate of speed. Q. Would you say that it was eighty miles an hour? A. I couldn't say. Q. And as far as you know there wasn't any flat tire on your car at that time just before it left the road? A. No; there wasn't anything wrong with the car all the way through. Q. The car was running along smoothly? A. Yes, sir." It also appears as an established fact that Thomas Cerra first informed his own attorney of the above incident after the first trial of Angelina Bonacci v. Cerra had commenced and plaintiff had, as a witness therein, testified thereto.

The foregoing record fairly discloses a course of litigation with peculiar progressive developments. In whatever aspect it may be viewed, it admonishes that great care should be exercised by this court in weighing and analyzing the evidence in this, as well as in all other "guest cases." Owing to the degree of negligence necessary, the guest statute presents cases new in character, and certainly involves characteristics peculiar to themselves. Almost invariably the occupants of the car are either relatives or intimate friends, and consequently friendly to recovery. That the present case is not an exception to this rule plainly appears. "Especially is this true in cases where an insurance company will be the one ultimately liable. Oftentimes even the defendant seems willing to stultify himself by confessing to wrong-doing that the plaintiff might prevail." Belik v. Warsocki, 126 Neb. 560, 253 N. W. 689.

Applying to the instant record the strict tests which the nature of the case and the clearly established relations and apparent inclinations of the parties involved necessitate, we will now consider the assignments of error on behalf of the appellant.

Appellant contends that no error was committed by the trial court in the first trial of this case, and that no tenable ground existed for the trial court to set aside the verdict

first rendered, and that error was committed in so doing. The principles controlling were well stated in the case of *De Matteo v. Lapidus,* 116 Neb. 549, 218 N. W. 379, viz.:

"An order of the trial court granting a new trial will not ordinarily be disturbed by this court, and not at all unless it clearly appears that no tenable ground existed therefor.

"In passing upon a motion for new trial by a *nisi prius* court, it is proper to consider conflicting and improbable evidence received upon the trial, together with all other facts, circumstances, conduct and events occurring during trial, as they appeared to the trial judge.

"An order granting a new trial by a *nisi prius* court which affords a litigant an opportunity to present his claims fairly in another trial will not be scrutinized as closely as would an order putting an end to his demands."

See, also, *Wells v. Cochran,* 84 Neb. 278, 120 N. W. 1123; *Schlaifer v. Omaha & C. B. Street R. Co.,* 98 Neb. 207, 152 N. W. 370; *Clausen v. Omaha Loan & Bldg. Ass'n,* 131 Neb. 666, 269 N. W. 517.

The letter of the trial judge disclosed by the record in the instant case forms no part of the judgment roll. The present determination must not be construed as an approval of the reasons stated therein as necessitating the sustaining of the motion for a new trial. For many assignments of error are contained in the motion for a new trial now under consideration which this order of the court in this case sustained generally. It is therefore the correctness of this order as an entirety, and not the reasons which the letter of the trial judge may contain, that is controlling. So considered, in view of the necessary discretion vested in the trial judge, we find no reversible error in his action so taken. The discussion of this subject in *De Matteo v. Lapidus, supra,* is extremely apropos in the instant case.

The appellant contends that improper methods were used by the jury in arriving at the amount of the verdict. To sustain this contention appellant relies on the affidavits of certain jurors to the effect that the verdict as returned by them was made up of estimated compensation of $25 a

month for 24 years, a total of $7,200, to which the jurors added $1,300 as probable medical expenses, which item is unsustained by evidence in the record.

The controlling principle applicable to the facts set forth in these affidavits is: "An affidavit of a juror as to what items the jury allowed or disallowed in computing the amount due, or what the jury believed they had a right to do under the instructions, is incompetent. Such matters are commonly held to inhere in the verdict." *Palmer v. Parmele,* 104 Neb. 30, 175 N. W. 649. See, also, *In re Estate of Alton,* 128 Neb. 411, 258 N. W. 871; *Schindler v. Mulhair,* 132 Neb. 809, 273 N. W. 217.

The questions covered by the assignments in appellant's motion for a new trial, based on the insufficiency of the evidence and that excessive damages appear to have been given by the jury under the influence of passion and prejudice, are more serious.

It appears that in the accident of August 15, 1935, plaintiff sustained a comminuted fracture of the humerus of her right arm. This was the chief injury suffered, though she received multiple bruises, and had abrasions and black and blue marks on her body, particularly her shoulder. She remained under the care of the surgeon practically continuously from the date of the accident to the date of her second trial, which occurred on May 4, 1937. Some three weeks had been spent in the hospital, and the surgeon testified that he made well over a hundred professional calls upon her. From this surgeon's testimony it is plain that at the point of fracture new bone was formed, and the humerus became solid again; that the junction was good and the bone united firmly; that it was this witness' opinion at the time of the trial that in another six months or a year Mrs. Bonacci would get back a 50 to 65 per cent. use of the injured arm. Mrs. Bonacci was 47 years of age at the time. Her occupation was housewife; no special qualifications appear, and no express value of her services was proved. There is no question that she suffered severe pain at the time of the accident, and the treatment to which

she was necessarily subjected entailed suffering and discomfort usual in view of the nature of the injuries suffered. On the other hand, by amendments to her pleadings, all reference to medical and surgical care, nurse and hospital expenses was stricken from her petition. No evidence as to the value thereof appears in the record. These items which often constitute an element of recovery in personal injury cases are thus entirely removed from our consideration. We are then left to determine the matter of the excessiveness of the recovery on the basis of pain and suffering and discomfort experienced and the fact of disability after the accident to the time of the last trial, with assurance that in substantially a short period of time she will be fully restored to the 50 or 65 per cent. use of the injured arm. We are fully agreed that the verdict of $8,500 under the facts is not only excessive (*Mullally v. Haslam*, 106 Neb. 860, 184 N. W. 910; *Orleans Village v. Perry*, 24 Neb. 831, 40 N. W. 417), but to such a degree, when taken in connection with all the evidence in this case, as to fairly establish that the same is the result of passion and prejudice. *Stewart v. Weiner*, 108 Neb. 49, 187 N. W. 121; *Hutchinson v. Western Bridge & Construction Co.*, 97 Neb. 439, 150 N. W. 193. We conclude, therefore, that the trial court erred in its order overruling appellant's motion for a new trial, and in its entry of judgment on the verdict.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.