SIEMON GOEMANN v. STATE OF NEBRASKA.

FILED FEBRUARY 5, 1917. No. 19816.

1. Criminal Law: TRIAL: SPECIAL COUNSEL. It is not error for the trial court, at the request of the county attorney, to appoint special counsel to assist in the prosecution of a misdemeanor.

2. ———: INSTRUCTION: REASONABLE DOUBT. Instruction set out in the opinion *held* free from error. In so far as *Burnett v. State*, 86 Neb. 11, is in conflict with this holding, it is overruled.

3. ———: WITNESSES: CROSS-EXAMINATION: DISCRETION. "The scope of the cross-examination of a witness rests largely in the trial court, and its ruling will be upheld, unless an abuse of discretion is shown." *Peterson v. State*, 63 Neb. 251.

ERROR to the district court for Wayne county: ANDREW R. OLESON, JUDGE. *Affirmed.*

*C. H. Hendrickson* and *J. A. Singhaus*, for plaintiff in error.

*Willis E. Reed, Attorney General*, and *Charles S. Roe*, contra.

Morrissey, C. J.

Plaintiff prosecutes error from a conviction on an information charging him with selling liquor without a license. The county attorney filed a request in writing for the appointment of A. R. Davis, a member of the Wayne county bar, to assist in the prosecution. Defendant filed objections alleging that Davis was employed by private parties to help conduct the prosecution, that he had theretofore been engaged in numerous cases against the defendant, and that by reason thereof he was prejudiced against the defendant, and would not conduct the prosecution in a fair and impartial manner. These objections were supported by an affidavit of the defendant in which he set out the cases wherein Mr. Davis had appeared as counsel against him. The county attorney filed a counter showing admitting that Davis had appeared as counsel in the cases mentioned, but specifically denying all other allegations. The statute does not forbid the employment of counsel by private parties to assist in the prosecution of misdemeanor cases, but in the instant case it is conclusively shown that Mr. Davis was not employed by private parties. The mere fact that he had appeared as counsel in other lawsuits in which Mr. Goemann was a party does not raise a presumption of personal malice, and the showing is sufficient to justify the court in finding that he was a proper and suitable party to assist in the conduct of the state's case. Furthermore, an examination of the entire record fails to show any improper conduct on his part.

The court gave the jury the following instruction: "The term 'reasonable doubt' used in these instructions is a term often used, probably pretty well understood, but not easily defined. It does not mean a mere possible doubt, because everything relating to human affairs and depending upon mortal evidence is open to some possible or imaginary doubt. It means some actual doubt having some reason for its basis.

"A reasonable doubt that entitles the defendant to an acquittal is a doubt reasonably arising from all the evidence, or the lack of evidence, or from a conflict in the evidence, in the case.

"The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress your reason and understanding as ordinarily prudent men and leave your minds in that condition that you can say you feel an abiding conviction to a moral certainty of the truth of the charge made against this defendant."

The giving of this instruction is assigned as error. We fully agree with the trial judge that "the term 'reasonable doubt'" is "pretty well understood, but not easily defined." This court has often been called upon to pass on instructions undertaking to define the term. In *Cowan v. State*, 22 Neb. 519, 525, an instruction which told the jury that a reasonable doubt is "a doubt for having which the jury can give a reason, based upon the testimony," was held to be erroneous. The question was again before the court in *Carr v. State*, 23 Neb. 749, and the court said: "It is error to charge a jury that it is a doubt for the having of which the juror can give a reason derived from the testimony." In this opinion the holding in *Cowan v. State* is adhered to, but it is pointed out that the instruction in that case is not wholly without support. It is also said that the clause in the instruction requiring the reversal was one which required the jury to be able to give a reason for entertaining the doubt. An instruction in *Childs v. State*, 34 Neb. 236, differs in phraseology, but the holdings in *Cowan v. State* and *Carr v. State* were adhered to. In *Whitney v. State*, 53 Neb. 287, the court approved an instruction in the following language: "You are instructed that a reasonable doubt is an actual, substantial doubt arising from the evidence, or want of evidence, in the case. That by reasonable doubt is not meant that the accused may possibly be innocent of the crime charged against him, but it means some actual doubt having

some reason for its basis. A reasonable doubt that entitles to an acquittal is a doubt reasonably arising from all the evidence, or want of evidence, in this case. The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the reason and understanding of ordinarily prudent men with a conviction on which they would act in the most important concerns or affairs of life."

Some confusion has arisen owing to the decision in *Burnett v. State,* 86 Neb. 11. But this court has frequently refused to reverse a judgment of the district court solely on account of an instruction worded as in the case at bar. In so far as *Burnett v. State* is in conflict with this holding it is overruled.

There are a number of other assignments directed against the rulings of the court on the cross-examination of witnesses for the state. Fred Lerner was called as a witness, and testified that upon the date charged in the information he purchased a pint of whiskey from the defendant. On cross-examination defendant's counsel asked him if he had not been arrested on a criminal charge the year before. Objection to this question was sustained, whereupon defendant's counsel made the following offer: "We offer to prove by the witness that he was arrested on a criminal charge in county court of Wayne county, Nebraska, during the year 1915, and was tried for the same offense before the county judge of Wayne county, Nebraska." Objection was sustained to this offer. It is argued that the evidence was offered for the purpose of testing the credibility of the witness. The offer does not undertake to show that the witness was convicted. An arrest and trial without a conviction could not discredit him before the jury or affect his credibility. Arthur O'Connell, another witness for the state, testified that he, together with the witness Lerner, and two others, drove to defendant's livery stable in an automobile; that Lerner went into the barn, but soon returned, and had with him a pint of whiskey, that he

offered witness a drink from the bottle, which witness refused. On cross-examination defendant's counsel undertook to show that Lerner at other times and places had offered O'Connell whiskey, and that Lerner kept whiskey in Goemann's livery barn. To these questions objection was made and the evidence excluded.

The scope of the cross-examination of a witness rests largely within the discretion of the trial court. Ordinarily it is better to permit considerable latitude. But the matters sought to be elicited on cross-examination were outside the scope of the witness' testimony in chief, and if proper and material in behalf of defendant they might have been shown in defendant's case in chief.

There is a further assignment that the court excluded evidence calculated to impeach the witness Lerner. This impeachment was directed to an immaterial matter that was drawn out on his cross-examination, and the evidence was properly excluded.

"The cross-examination of a witness should be restricted to the facts and circumstances drawn out on his direct examination. If it is desired to examine the witness upon other matters, the party desiring such examination must make the witness his own, and call him as such." *Davis v. Neligh,* 7 Neb. 84.

Finally, it is insisted that the evidence does not sustain the verdict. We have read the entire record, but it would serve no useful purpose to set out the evidence at length. The story told by the state's witnesses is sufficient to sustain the verdict, if true. It was denied by defendant, and he was corroborated in the main by another witness. All of these witnesses were residents of Wayne county. They were probably personally known to most of the jury. The jury heard them testify and saw fit to believe the witnesses for the state. The evidence would sustain a verdict either way. We cannot set our judgment up against that of the jury, and the judgment is

AFFIRMED.

HAMER, J., dissenting.

I am not quite able to agree with the majority opinion. The information charges that on or about the 18th day of September, 1915, in the city of Wayne, county of Wayne, and state of Nebraska, one Siemon Goemann unlawfully and feloniously sold to one Fred Lerner one pint of whiskey, and that at the time he sold the same he did not have a license to sell intoxicating liquors in said city or county. The same charge is made against Goemann for selling whiskey to Lerner on the 26th of September. "Bootlegging"—that is, the selling of intoxicating liquor without license—is generaly regarded with much disfavor and as deserving of certain punishment. The plaintiff in error, Goemann, hereafter called the defendant, was fined $250 for selling the pint of whiskey mentioned in the first count. He was acquitted on the second charge. An offender charged with "bootlegging" is, in the eyes of the law, entitled to a fair trial. He should be tried just as fairly as if charged with a more serious infraction of the law. The rules of evidence are just the same as applied to all alleged violators of the law. It is not enough that the evidence is sufficient to raise a suspicion to the effect that the defendant is guilty. To justify a verdict of guilty the evidence should be strong enough to convince the reason of an impartial juror, after a consideration of all the facts and circumstances pertaining to the case, and regardless of consequences. If the evidence fails to establish the guilt of the accused beyond a reasonable doubt, then he should be acquitted. Certain witnesses testified that the defendant was in sight, and that he did not go to the back of the barn, where Lerner says the transaction took place. It was for the jury to say whether they believed Lerner, or whether they believed the witnesses who testified for the defendant. All that the defendant is entitled to is a fair trial, and, if the evidence justifies his conviction, then he must pay the penalty.

If an improper instruction was given which was prej-udicial to the defendant, then he is entitled to a new trial. In the instant case the court has taken the occasion to justify an instruction that seems to be vicious in the extreme. The objectionable instruction, as it appears in 'the majority opinion, is divided into three paragraphs, a part of which we will present as we discuss the instruction. In the first of these paragraphs it is said: "It (a reasonable doubt) does not mean a mere possible doubt, because everything relating to human affairs and depending upon mortal evidence is open to some possible or imaginary doubt. It means some actual doubt having some reason for its basis." This was telling the jury that before they could acquit the accused they must give "some reason" for such acquittal. So far as this part of this instruction is concerned, there might be all sorts of doubts in the mind of the juror as to the guilt of the accused, and reasoning the best he might, and closely analyzing the evidence, he might be uncertain of the guilt of the accused, but this part of the instruction compels the juror to give a reason. He is required to explain why he dares to doubt. It was never intended that the juror should be placed by the court in such a position that he would have to explain what he had done.

It is next said: "A reasonable doubt that entitles the defendant to an acquittal is a doubt reasonably arising from all the evidence, or the lack of evidence, or from a conflict in the evidence, in the case."

The burden of proof is upon the state, and, if the state fails to establish its case by sufficient proof, then it is the duty of the jury to acquit the defendant, and whether they can say that the doubt which they entertained reasonably arises from the evidence, or the lack of evidence, or from a conflict in the evidence, is immaterial. The question is whether the juror doubts the guilt of the accused. The juror is oftentimes a strong citizen with the clearest sort of perception concerning those things

with which he is familiar, but to load him up with a task. like that contained in the second paragraph of this instruction is altogether too much. Besides, it is danger- ous, and that sort of a rule is likely to result in the conviction of a good man or a good woman. If this defendant is supposed to be a "bootlegger," there may be a feeling, an unconscious feeling, that he is not en- titled to the same protection that other persons charged with violating the law may clearly be entitled to. But a bad rule established in this case is likely to be used against your best citizen when he is put on trial upon the charge of murder, although what he has done was done in self-defense. · A bad rule once started out never loses its power to do harm.

The instruction justified in the case at bar is not un- like an instruction given in *Flege v. State,* 93 Neb. 610. In that case the defendant was charged with murder. The obnoxious instruction reads: "And, if you believe the defendant not guilty, and that he did not shoot and kill the said Louise Flege, as alleged in the information, or in the event that the evidence introduced in the case is so evenly balanced that you cannot tell whether de- fendant or some other person shot and killed the de- ceased, as alleged, then you should acquit the defendant, or if you entertain any reasonable doubt of the guilt of the accused of the crime charged in the information, then you should give the defendant the benefit of such doubt and acquit him."

Touching this instruction, this court said that the instruction was "objectionable in several particulars: First, if the jury believe the defendant not guilty, they should acquit; second, if they believe he did not shoot and kill the deceased, they should acquit him; third, if the evidence is evenly. balanced, they should acquit; fourth, if they cannot tell whether defendant or some other person committed the crime, they should acquit; or, fifth, if they have any reasonable doubt of his guilt, they should acquit. We know of no rule of law that

requires the jury to 'believe the defendant not guilty,'
or that he 'did not shoot and kill' the decedent before
they could acquit." In the instant case the jury are
treated by the instruction given as if they were trying to
shirk a duty. Oftentimes the jurors are fairly intelligent,
and sometimes the learning which they possess is super-
ior to that of the man who assumes to instruct them,
although he may have had more training along a par-
ticular line than they. There is also in the paragraph
quoted the idea that the defendant is guilty. No court
has any business to say that, even when the offense is so
small as the sale of a pint of whiskey.

In *Bartels v. State,* 91 Neb. 575, the defendant was
charged with stealing a lot of chickens, 56 of them, I be-
lieve. The trial court properly looked on this offense
with great disfavor. He therefore charged the jury:
"The rule which clothes every. one accused of crime
with the presumption of innocence, and imposes upon
the state the burden of establishing his guilt beyond a
reasonable doubt, is not intended to aid any one who is
in fact guilty to escape, but is a humane provision of
the law intended, so far as human agencies can, to guard
against the danger of an innocent person being unjustly
punished. A doubt, to justify an acquittal, must be
reasonable, and it must arise from a candid and im-
partial investigation of all the evidence in the case; and
unless it is such that, were the same kind of a doubt
interposed in the graver transactions of life, it would
cause a reasonable and prudent man to hesitate and
pause, it is insufficient to authorize a verdict of not
guilty. If, after considering all the evidence, you can
say you have an abiding conviction of the truth of the
charge, you are satisfied beyond a reasonable doubt."

In that case Judge Sedgwick, delivering the opinion of
the court, said: "If we consider that the witness Phillips
was by his own testimony an accomplice in guilt, and
that his evidence is wholly uncorroborated, it would seem
probable that the jury by the eleventh instruction above

quoted were led to believe that there must be some special circumstances in the case 'to justify an acquittal' and 'authorize a verdict of not guilty.'" It will be noticed that the first sentence of the instruction last above quoted from treats the subject of reasonable doubt as if made for innocent persons alone, and not intended to let the guilty escape. There is also in it the same theory that the jury are not at liberty to render a verdict of acquittal unless they "justify" themselves.

In *Burnett v. State,* 86 Neb. 11, this court seems to have condemned the following instruction: "A reasonable doubt, as used in these instructions, to justify an acquittal, must be a reasonable one arising from a candid and impartial investigation of all of the evidence in the case. A doubt produced by an undue sensibility in the mind of any juror in view of the consequences of his verdict is not a reasonable doubt, and the juror is not allowed to create sources or materials of doubt by resorting to trivial or fanciful suspicions and remote conjectures as to a possible state of facts differing from those established by the evidence. You are not at liberty to disbelieve as jurors if, free from all the evidence, you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered. That by reasonable doubt is not meant that the accused may possibly be innocent of the crime charged against him, but it means some actual doubt having some reason for its basis. A reasonable doubt that entitles to an acquittal is a doubt reasonably arising from all the evidence or want of evidence, in this case. The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the reason and understanding of ordinarily prudent men with a conviction on which they would act in the most important concerns and affairs of life."

The opinion in that case was prepared by Judge Barnes. There was only one dissent. The judgment of the court below was reversed. While the instruction

in that case is different from the very obnoxious instruction in this case, there is some similarity. The similarity is in the language which holds the jury up as if it were guilty and likely to go wrong, and that a court, because it was a court, had a right to talk to the jurors as if it possessed the sum total of human virtues. I hope that the syllabus in this case, which seems to justify the use of the instruction in the *Burnett* case, may be overruled at once. We cannot afford to use any part of the instruction used in Chicago to hang the anarchists. *Spies v. People,* 122 Ill. 1. Although the opinion in the foregoing case was filed only 30 years ago, it is as much a historical relic in several states as the hanging of innocent women at Salem, Massachusetts, on the charge of witchcraft. Of course, the judges in the witchcraft cases were no more to blame than their neighbors. The instructions in the *Spies* case were:

"(12) The court instructs the jury, as a matter of law, that in considering the case the jury are not to go beyond the evidence to hunt up doubts, nor must they entertain such doubts as are merely chimerical or conjectural. A doubt, to justify an acquittal, must be reasonable, and it must arise from a candid and impartial investigation of all the evidence in the case; and unless it is such that, were the same kind of doubt interposed in the graver transactions of life, it would cause a reasonable and prudent man to hesitate and pause, it is insufficient to authorize a verdict of not guilty. If, after considering all the evidence, you can say you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt.

"(13) The court further instructs the jury, as a matter of law, that the doubt which the juror is allowed to retain in his own mind, and under the influence of which he should frame a verdict of not guilty, must always be a reasonable one. A doubt produced by undue sensibility in the mind of any juror, in view of the consequences of his verdict, is not a reasonable doubt, and a

juror is not allowed to create sources or materials of doubt by resorting to trivial and fanciful suppositions and remote conjectures as to possible states of fact differing from that established by the evidence. You are not at liberty to disbelieve as jurors, if, from the evidence, you believe as men. Your oath imposes on you no obligation to doubt, where no doubt would exist if no oath had been administered."

The foregoing instructions were the outgrowth of a state of war in Chicago, and they were no doubt intended and constructed to secure the conviction and execution of the anarchists on trial. We have no state of war in Nebraska, and these instructions should not be followed.

It is an invasion of the province of the jury in a criminal case when the court lectures the jury and gives it to understand that it must render a verdict in a particular way. The jurors are there for the purpose of exercising their best judgment, and a court has no business to attempt to crowd them out of the exercise of their peculiar functions. It is also very objectionable when the court indicates that it has any opinion touching the merits of a criminal case. We all know how ready the jurors are to catch the words of the trial court and to be controlled by them.