ROY HAMPTON, PLAINTIFF IN ERROR, V. THE STATE OF
NEBRASKA, DEFENDANT IN ERROR.

28 N. W. 2d 322

Filed June 27, 1947.    No. 32230.

*Charles A. Fisher,* for plaintiff in error.

*Walter R. Johnson,* Attorney General, and *Erwin A. Jones,* for defendant in error.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

The defendant, plaintiff in error, was informed against, tried and found guilty of maliciously shooting one Loretta Hampton with intent to kill, wound and maim her. He brings the cause here assigning error in several particulars. We affirm the judgment of the trial court.

Defendant and Loretta Hampton were formerly husband and wife, they having been separated by divorce. The shooting occurred outdoors in the yard of the home of Mrs. Hampton about 12:15 or 12:30 a. m., May 30, 1946. That Mrs. Hampton was shot by a repeating shotgun in the hands of defendant is not disputed. The defense was that the shooting was accidental and not intentional.

It appears that some days prior to the shooting, the defendant took the shotgun, some shells, and shirts to Mrs. Hampton's home, and with her consent placed them in the basement. On the night of May 29, the defendant went to the home about midnight and entered it. Mrs. Hampton was not there. She came in shortly. Mrs. Hampton testified that defendant asked her who brought her home; she told him. He went to the basement; she followed. She testified that he got the gun and told her it had to end. Mrs. Hampton turned, ran upstairs and outdoors, and tried to hide in a hedge. He followed her with the gun in his hand.

She testified he said she had it coming and was going to get it; she screamed, begged him not to shoot, and the shot followed, resulting in her serious wounds. He testified the gun went off accidentally.

Parties in the house next door were permitted, over objection, to testify that they heard the voices, the screaming, the shot, and were also permitted to testify as to what was said by a man's voice and a woman's voice. Their testimony corroborated Mrs. Hampton. They did not identify the voices as those of Mrs. Hampton and of defendant. Defendant assigns as prejudicial error the admission of the testimony as to what they heard said that night. This evidence was not offered until the state had produced Mrs. Hampton's evidence placing the defendant and Mrs. Hampton in the yard at the time involved, and also her testimony of conversations directly connecting defendant with them. There is no one else shown to have been present. We think this evidence falls within the classification of circumstantial evidence, the admission of which was within the sound discretion of the trial court. Under these circumstances its admission was not error.

The evidence showed that the main charge of the shot struck Mrs. Hampton in her right arm between the elbow and wrist. The trial court admitted in evidence an X-ray picture taken some time after the injury, showing the arm with a part of one bone gone and the presence of several shot and particles of shot in the flesh of the arm. In MacAvoy v. State, 144 Neb. 827, 15 N. W. 2d 45, we held: "Where a photograph illustrates or makes clear some controverted issue in the case, a proper foundation having otherwise been laid for its reception in evidence, it may properly be received, even though it may present a gruesome spectacle." The evidence was admissible and the assignment is without merit.

Just before the close of the state's case-in-chief, the state requested that the jury be given an opportunity

to examine the outside of the premises where the shooting occurred. The defendant stated he had no objection. The court instructed the jury to proceed in a body to the premises and that they might inspect the outside, but not to discuss the case nor form an opinion, and that after they made the inspection they could be excused until 9 a. m. the next morning. The sheriff was called to escort the jury and instructed not to permit anyone to discuss the case with them. Defendant assigns as error that the court permitted the jury to view the scene of the crime without the presence of the defendant. The record is silent as to whether or not the defendant accompanied the jury to view the premises. In fact, the bill of exceptions does not show that the jury actually did view the premises. Be that as it may, in Fillion v. State, 5 Neb. 351, we held that to obtain a review, error must affirmatively appear in the record; and that whenever the facts stated in the record are consistent with the duty of the court, and nothing is shown to establish a contrary theory, it will be assumed that the court acted properly and all things were rightly done. In that case the facts were remarkably similar to the facts in the instant case. Under the above rule we held that error was not shown. We reach the same conclusion here.

There was evidence offered by the state and the defense as to the gun, its operation and condition, and as to whether or not it was left in a loaded condition prior to the shooting. Mrs. Hampton on cross-examination testified, without objection or motion to strike, that a few days before the shooting their son had found the gun loaded and had told her he had unloaded it. The defendant testified that he never left shells in the barrel, but did in the magazine. On rebuttal the state offered the testimony of the son who stated, over objection, that on May 27 preceding the shooting here involved, he found the gun loaded and unloaded it.

As a part of the state's case-in-chief there were admitted in evidence a photograph of a lawn chair in which shot were found, and also an empty cartridge and evidence as to where it was found. On rebuttal the state offered, and there was received in evidence, a picture showing the place where the shell was found, the chair, and a tree in which shot markings were found. Defendant assigns the admission of this evidence in rebuttal as prejudicial error. Defendant offered no evidence to contradict the evidence received and does not claim to have any.

Section 29-2016, R. S. 1943, provides that after defendant has produced his evidence, the state will be confined to rebutting evidence, unless the court for good reason in furtherance of justice shall permit it to offer evidence in chief. Such would be the rule in the absence of statute. While it would have been better practice for the state to have introduced this evidence in its case-in-chief, it is within the discretion of the court to permit in rebuttal the introduction of evidence not strictly rebutting. Neither abuse of discretion nor prejudice is shown.

The record shows that the defendant, on cross-examination of Mrs. Hampton, went into quarrels about other men between Mrs. Hampton and the defendant over a period of time preceding the shooting here involved, and developed that at least one of the quarrels resulted in personal violence between the defendant and another man. On cross-examination of the defendant, the state also went into some of these quarrels. Mrs. Hampton's birthday was on May 23. Defendant was present at a birthday party that evening at a club. Defendant's birthday was on May 25. Defendant testified on direct examination that he and Mrs. Hampton exchanged birthday gifts. The state, on cross-examination of defendant, brought out that on May 25 (defendant's birthday) a party including defendant and Mrs. Hampton and a Mr. and Mrs. Dun-

can went to a number of places and finally to the Duncan home. Some of the parties had been drinking and according to the defendant, "We was all in pretty good shape." An argument occurred involving Mrs. Duncan. Defendant testified that he left the Duncan home, went to Mrs. Hampton's home, saw his son, and told him of his mother's actions. He said he went there to talk to his son, and that he was pretty drunk that night. He was asked if he did not pick up the gun and say he was going out and use it. Defendant didn't "recall." He was asked if he and the son didn't quarrel about the gun and again he didn't recall that. He denied that Mrs. Hampton had asked him to get the gun out of the house as she didn't want him to have it around to threaten people. On rebuttal the state asked the son as to the events of that evening. The son testified that he was abed in the basement of his mother's home in the room where the gun then was; that defendant came home, picked up the gun, and said he was going to take it with him; that defendant had had an argument with Duncan that night, and that Duncan could not treat him that way. Defendant objected to this rebuttal evidence, and here contends that it constitutes evidence of threats against a third person, and its admission was prejudicial error. Defendant relies upon the rule stated in Carr v. State, 23 Neb. 749, 37 N. W. 630, that "As a general rule, threats made by the defendant prior to the murder, to kill or injure some other person than the deceased, are not admissible as evidence against him." If this rebuttal evidence stood alone there would be a serious question as to its admissibility. But it does not stand alone. The defendant first on cross-examination of Mrs. Hampton injected into the evidence facts of quarrels with Mrs. Hampton and third parties, arising because of the attention paid to her by other men. The defendant testified to the exchange of birthday gifts, indicating harmonious relations at that time. The state on cross-

examination of defendant developed the incidents occurring on the night of defendant's birthday and of the trouble that arose. The rebuttal evidence, to which defendant objects, was offered to supply that which defendant did not recall. Under these circumstances we are of the opinion that its admission was not prejudicial error.

The transcript shows "Instructions Given by the Court." Defendant complains of Instruction No. 7, which is entitled, "Information No. 7"; the other subheads are all entitled "Instruction No." ——. The instruction is as follows: "The defendant says that he did not know, and did not have any reason to believe that the gun in question was loaded, and that said gun was discharged accidentally and unintentionally, and that when it was discharged, he did not intend to shoot, kill, maim or wound the said Loretta Hampton, and if you so find, or if there is a reasonable doubt in your mind as to how said gun was discharged, or that the defendant purposely shot the <u>defendant</u>, or that said shooting was maliciously done, or as to the defendant's intent, or that said intent was to feloniously kill or wound or maim said Loretta Hampton, then you cannot find the defendant guilty as charged, and it matters not how careless or negligent the defendant may have been, or how great the injury may have been to Loretta Hampton." Complaint is made to the use of the word "Information" and to the underscored language in the instruction. Obviously, the use of the word "Information" was an error; obviously, the use of the word "defendant" where underscored was an error and just as obviously we think the jury could not have been confused by the instruction. They obviously knew that the "Information" was an instruction and quite clearly they knew that the defendant was not accused of shooting himself. An instruction will not be held to be prejudicially erroneous merely

because of a harmless imperfection which cannot reasonably be said to have confused or misled the jury to the prejudice of the party complaining. Kaufmann v. State, 112 Neb. 718, 200 N. W. 998; Hans v. State, 147 Neb. 67, 22 N. W. 2d 385.

Defendant, pointing out that there was evidence of his intoxication on the night of the shooting, complains that the trial court did not, on its own motion, charge the jury of the effect of intoxication and whether defendant was capable of forming the necessary intent. Without determining whether or not such an instruction should have been given if requested, we point out that in Curtis v. State, 97 Neb. 397, 150 N. W. 264, we were presented with the same contention, and held that error cannot be predicated on a failure to give an instruction on the question of the intoxication of the defendant as affecting criminal intent unless a request was made for such a charge and the request denied. The ruling applies here.

The defendant was sentenced to serve a period of 15 years. He contends that in any event the sentence is excessive. The record amply sustains the jury's verdict of guilt. The defendant was well acquainted with the gun he used; he knew its dangers and power of destruction. That his act did not result in the death of Mrs. Hampton was not of his design. The act did result in the serious wounding of Mrs. Hampton, her confinement in a hospital for a long period, and the loss of the use of her lower right arm and hand. The sentence is not excessive and is warranted by the evidence.

The judgment of the district court is affirmed.

AFFIRMED.