JOE SPREITZER, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA,
DEFENDANT IN ERROR.
50 N. W. 2d 516

Filed December 21, 1951.   No. 33051.

*Grenville P. North* and *Francis M. Casey,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, *Walter E. Nolte,* and *Clarence A. H. Meyer,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

A jury found plaintiff in error, hereinafter called defendant, guilty of grand larceny. His motion for new trial was overruled, and the trial court sentenced him to be imprisoned in the Nebraska State Penitentiary for two years. Therefrom he prosecuted error to this court, assigning substantially: (1) That the information did not charge an offense under the statute; (2) that the trial court erred in failing and refusing to give him six peremptory challenges; (3) that the verdict was not sustained by the evidence but was contrary thereto and contrary to law; (4) that the jury was guilty of prejudicial misconduct by the manner in which it arrived at the value of the property allegedly taken; and (5) that the trial court erroneously failed to instruct on the law applicable to the case, and in giving instructions Nos. 1, 4, 5, 6, and 13. We conclude that the assignments have no merit.

The statute involved, section 28-506, R. R. S. 1943, provides: "Whoever steals any money or goods and chattels of any kind whatever, whether the same be wholly money, or wholly in other property, or partly in money and partly in other property, the property of another, of the value of thirty-five dollars or upwards * * * shall be imprisoned in the penitentiary not more than seven years nor less than one year."

In the light thereof, we have examined the information and conclude that it did sufficiently charge the offense of grand larceny. The information, insofar as important here, charged that on September 8, 1950, contrary to the form of the statutes in such cases made and provided, defendant "did unlawfully, wrongfully and feloniously and with the intent to steal, did take and carry away from the premises of the Union Pacific Railroad Company at Higgins Crossing in said County of Sarpy, State of Nebraska, property of value, to-wit: Fourteen (14) un-used railroad cross-ties of the value of $35.00 and up-wards, and being then and there the property of the said Union Pacific Railroad Company."

In Hans v. State, 147 Neb. 67, 22 N. W. 2d 385, this court held: "In charging the commission of an offense in an information, it is not necessary that the exact words of the statute be used, provided the words employed are the equivalent in meaning of those contained in the statutes.

"The court will give the words used in the information their ordinary and commonly accepted meaning, and when viewed in this light, if the words employed mean the same thing as those found in the language of the statute denouncing the offense, the information will be upheld."

In Pauli v. State, 151 Neb. 385, 37 N. W. 2d 717, it was held: "An information which apprises the defendant, with reasonable certainty, of the accusation against him so that he may prepare a defense and plead the judgment as a bar to subsequent prosecution for the same

offense, meets fundamental purposes of information, as well as constitutional requirements."

Only recently this court reaffirmed the rule that: "A complaint or information is fatally defective only if its allegations can be true and still not charge a crime." Phillips v. State, 154 Neb. 790, 49 N. W. 2d 698.

The foregoing rules have application here, and affirm the sufficiency of the information.

For the first time, and that on motion for new trial, defendant complained that the trial court erroneously failed and refused to allow defendant six peremptory challenges. In that respect the record discloses as follows: "MONDAY, MARCH 19th, 1951, 10:00 A. M.: (Jury names drawn by the Clerk, examination for cause by attorneys for Plaintiff and Defendant.) MONDAY, MARCH 19th, 1951, 1:30 P. M.: (Impanelling of jury continued, and challenges exercised by Plaintiff and Defendant.) * * * Jury empaneled and sworn at 2:24 P. M."

It does not appear any place in the record that the court failed or refused to give defendant six peremptory challenges or that defendant requested the same. Rather, the record discloses that he exercised two such challenges, then waived the third, and, without making any request or taking any exceptions, presumptively waived the other three. If the defendant did not exercise all of them, the court was not at fault. It can only be concluded that defendant was satisfied with the jury until it found him guilty, and then, as an afterthought, raised the question without anything in the record to sustain it.

As stated in Nash v. State, 110 Neb. 712, 194 N. W. 869: "The record shows that the jury were duly impaneled and sworn, and, nothing appearing to the contrary, the presumption is that the jury were properly and lawfully selected. * * * The fact appearing in the record that no exceptions were taken to the jury by the defendants indicates that it was a fair and impartial jury, such as the Constitution guarantees to a party.

The defendants were tried by a jury to which they took no exceptions, and this in itself should constitute a waiver of further peremptory challenges."

Also, as held in Hampton v. State, 148 Neb. 574, 28 N. W. 2d 322: "Whenever the facts stated in the record are consistent with the duty of the court, and nothing is shown to establish a contrary theory, it will be assumed that the court acted properly and all things were rightly done." We conclude that the second assignment of error has no merit.

We turn then to the third assignment, relating to insufficiency of the evidence. In that connection, the record discloses that eye witnesses identified defendant as one of several men who, at the time and place alleged, loaded the 14 new and unused cross ties belonging to the Union Pacific Railroad in a truck identified by description and license number, and hauled them away without the owner's permission. In fact, defendant was identified as the driver of the truck. The ties were soon thereafter located at a feed lot just south of Omaha, on the Fort Crook road, where they were being used by the feeder to build a fence and loading chute. Such feeder, as a witness for the State, admitted that in accord with a prior arrangement, he bought the ties from defendant, paying him therefor the sum of $14. Such witness testified on cross-examination, but over objection by the State, and without any foundation, that on September 8, 1950, he considered that $14 was their fair value. There was competent evidence that defendant admitted to an investigator that, using his own truck, he hauled the ties to the feeder and sold them to him, but claimed that he had overtaken a panel truck driver under a highway overpass and purchased the ties from such truck driver, without knowing who he was or who owned the ties.

The ties were new creosoted railroad cross ties, designed for, purchased by, and belonging to the Union Pacific Railroad Company. They were identified by

such railroad's particular brand or markings on the ties. They were not sold to the public but only to railroads or for the construction of adjoining railroad side tracks. The assistant general purchasing agent of the Union Pacific Railroad, who had served in that capacity for 23 years, and whose duties, among others, was to purchase ties for that railroad, testified that in his opinion the value of the ties when taken was $4 each, which made a total of $56. Contrary to defendant's contention, there was ample and sufficient foundation laid for the admission of such testimony by that witness. Defendant adduced no evidence in his own behalf. ·

The jury fixed the value of the property as $35. Such value was a question of fact for its determination, and examination of the record discloses that under the evidence it could as well have found that the property was worth more, up to $56.

In Edmonds v. State, 42 Neb. 684, 60 N. W. 957, this court held: "In a prosecution for larceny, proof of the value of the property stolen must be made by at least one witness affirmatively shown to possess knowledge of the value concerning which he is called upon to give evidence. Following Brooks v. State, 28 Neb., 389." That rule was complied with in every respect in the case at bar.

In Clark v. State, 151 Neb. 348, 37 N. W. 2d 601, this court held: "It is not the province of this court to resolve conflicts in the evidence in law actions, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Those matters are for the jury.

"Where there is substantial evidence sustaining the jury's verdict, it will not be set aside."

In Smith v. State, 153 Neb. 308, 44 N. W. 2d 497, it was said: "The credibility of the witnesses and the weight of their testimony was for the jury to determine and the decision of the jury cannot be disturbed unless

it is clearly wrong. Morrow v. State, 146 Neb. 601, 20 N. W. 2d 602."

It was recently reaffirmed in Phillips v. State, *supra,* that: "In a criminal case, this court will not interfere with a verdict of guilty based upon the evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt."

We conclude that the evidence adduced by the State was amply sufficient to sustain the verdict.

Defendant contended that the jury was guilty of misconduct because it erroneously arrived at the value of the property by adding the evidence given by the two witnesses regarding value, and dividing that sum by two, thereby arriving at a quotient verdict. Upon motion for new trial the affidavits of two jurors so indicating were offered in evidence but refused. We conclude that the trial court properly refused to admit or consider them. Contrary to defendant's contention, there is no showing in this record which would justify any finding that the jury returned a quotient verdict upon the question of value. As stated in 53 Am. Jur., Trial, § 1031, p. 712: "The invalidity of quotient verdicts depends not upon the method of arriving at the verdict, or the result reached, but on the previous agreement to be bound by the result of the quotient process. The test to be applied in determining the validity of a verdict which is attacked as a quotient verdict is whether the jury agreed beforehand to be bound by the result reached; the existence of such agreement is the test in both criminal prosecutions and civil actions."

The applicable rule here is that: " '* * * no affidavit, deposition, or other sworn statement of a juror will be received to impeach the verdict, to explain it, to show on what grounds it was rendered, or to show a mistake in it; or that they misunderstood the charge of the court; or that they otherwise mistook the law, or the result of their finding.' " Hamblin v. State, 81 Neb. 148, 115 N.

W. 850. See, also, Schindler v. Mulhair, 132 Neb. 809, 273 N. W. 217, and Bonacci v. Cerra, 134 Neb. 588, 279 N. W. 314, wherein it was held: " 'An affidavit of a juror as to what items the jury allowed or disallowed in computing the amount due, or what the jury believed they had a right to do under the instructions, is incompetent. Such matters are commonly held to inhere in the verdict.' Palmer v. Parmele, 104 Neb. 30, 175 N. W. 649."

Defendant argued that the trial court erred when it failed to instruct on the law applicable to the case. In that connection, defendant argued that the trial court should have given the jury some measuring stick to use in determining the value of the property allegedly stolen. Instruction No. 12, told the jury: "If you find the defendant guilty beyond a reasonable doubt as charged in the information, it is your province and duty to ascertain and determine the value of the property described in the information and alleged to have been stolen, as shown by the evidence beyond a reasonable doubt to have been taken as charged in the information, and you will state in your verdict such value of the property so taken, although it may not literally be the same value as set forth in the information." In that respect, the court complied with section 29-2026, R. R. S. 1943, which provides: "When the indictment charges an offense against the property of another by larceny * * * the jury, on conviction, shall ascertain and declare in their verdict the value of the property stolen, * * *."

The information submitted by instruction No. 1 alleged that on September 8, 1950, the property had a value of $35 and upwards. That was the only date involved in the case. All of the material evidence related to that date, and its fair value as of that date. The jury could not have been misled if they determined the value of the property from the evidence adduced, as they were required to do, and the mere failure to use the words "fair and reasonable" in instruction No. 12 could not have been error prejudicial to defendant.

Defendant assigned that the trial court erred in giving instructions Nos. 1, 4, 5, 6, and 13. The complaint with reference to instructions Nos. 1, 5, and 6 was predicated upon the contention that the information did not charge a crime, which we have heretofore concluded has no merit. Therefore, from an examination of the instructions and previous discussion it is apparent that such instructions clearly and correctly stated the law in every respect.

Instruction No. 4 told the jury in part: "By the words 'reasonable doubt' as used in these instructions is meant an actual, substantial doubt of guilt arising in your minds from the evidence *or want of evidence in the case.*" (Italics supplied.) Defendant argued that the italicized words were prejudicial to defendant since he did not adduce any evidence in his own behalf. The contention has no merit. In Trimble v. State, 118 Neb. 267, 224 N. W. 274, this court said: " 'It is proper to charge, and error to refuse to charge, that a reasonable doubt may arise either from the evidence or from a want of the evidence, and that the absence of sufficiently satisfying evidence may be a ground for a reasonable doubt of defendant's guilt.' " See, also, McIntosh v. State, 105 Neb. 328, 180 N. W. 573, 12 A. L. R. 798, and Goemann v. State, 100 Neb. 772, 161 N. W. 421, together with cases cited therein, approving the very instruction here involved.

Instruction No. 13 read in part: "In determining the credibility and weight to be given to the testimony of witnesses, you should take into consideration their interest, if any, in the result of this case; their conduct and demeanor while testifying; their opportunities for seeing and knowing the things about which they testify; and the *probability or improbability* of their testimony." (Italics supplied.) Defendant complained that the words "probability or improbability" used therein, permitted the jury to convict on probable cause, instead of permitting it to determine that which was true and that

which was not true. No authority was cited to support such contention. This court has on a number of occasions approved almost identical instructions. They are correlated in I Corcoran, Nebraska Instructions to Juries (2d ed.), sections 1432, 1433, and 1434, pages 369 and 370.

As generally understood, the words "probability or improbability of their testimony" mean whether their testimony has the appearance of truth or falsehood, that is, whether it is credible or incredible, believable or unbelievable.

As stated in Mulder v. State, 152 Neb. 795, 42 N. W. 2d 858: "It is elementary that in passing upon the validity of part of an instruction, it must be considered not only in the light of all the language used in the particular instruction of which it is a part, but also all other instructions given by the trial court." In the light thereof, we have examined all of the instructions given and conclude that they properly and fairly submitted the issues to the jury.

Other matters are discussed in defendant's brief, but they are entirely without merit, and to discuss them would serve no purpose except to unduly prolong this opinion.

Finding no error in the record prejudicial to defendant, we conclude that the judgment should be and hereby is affirmed.

AFFIRMED.