ROBERT L. HAINES, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

102 N. W. 2d 609

Filed April 22, 1960. No. 34655.

*Kelly & Kelly,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Cecil S. Brubaker,* for defendant in error.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Robert L. Haines, hereinafter called defendant, was charged in an amended information filed January 29, 1959, in the district court for Buffalo County with converting to his own use and embezzlement of public money while serving from February 1, 1956, to August 25, 1958, as a justice of the peace of Buffalo County. The information contained six separate counts. The first five counts each separately charged in substance that defendant, while serving as such justice of the peace, "unlawfully and feloniously and fraudulently" converted to his own use and embezzled in Buffalo County specified sums of money paid to him as fines by named persons, at specified times, as follows: Count I, $57; Count II, $45; Count III, $90; Count IV, $20; and Count V, $20. Count VI likewise charged that defendant converted to his own use and embezzled not less than $4,618, paid to him as fines exclusive of Counts I through V, between February 1, 1956, and May 31, 1958.

Upon arraignment, defendant was present in court with his own counsel, whereat the information was read in full to defendant, and the trial court asked defendant separately as to each count and as to the information as a whole how he wished to plead thereto. Thereupon, defendant personally stated to the court that he stood mute as to each count separately and as to the information as a whole, whereupon as to each count separately and as to the information as a whole, the

court entered a plea of "Not Guilty" on defendant's behalf.

After consultation with attorneys for the State and defendant, the case was set for trial Tuesday, March 17, 1959, at 10 a. m., and trial to a jury, with defendant and his own counsel present, was commenced on that date. At conclusion of the State's case, and again at conclusion of all the evidence, defendant's counsel moved for dismissal or acquittal of defendant for alleged insufficiency of the evidence to support a conviction of the crimes charged. Such motions were overruled, and after the issues were submitted to a jury, it returned a verdict finding defendant guilty on each and all of the separate counts charged in the information and finding that the amount of money converted by defendant to his own use and embezzled by him in each count was as follows: Count I, $57; Count II, $45; Count III, $90; Count IV, $20; Count V, $20; and Count VI, $1,360. Thereafter, defendant's motion for new trial was overruled, and he was sentenced to serve a term of not less than 3 nor more than 6 years in the Nebraska Reformatory for Men upon each of the six counts of the information. However, the sentences were ordered to run concurrently and not consecutively. Defendant was also sentenced to pay a fine on each of the separate counts as follows: Count I, $114; Count II, $90; Count III, $180; Count IV, $40; Count V, $40; and Count VI, $2,720, together with costs of prosecution on each and all counts.

Thereafter, defendant prosecuted error to this court, assigning in substance: (1) That the information was defective and did not charge defendant with commission of the crimes alleged as provided by the statute; (2) that the trial court erred in admitting certain evidence relating to a possible violation of other laws not connected with the issues in the case at bar, and erred in permitting the county attorney, over objections of defendant, to make prejudicial opening statements to the

jury with relation thereto; and (3) that the verdict returned by the jury was not sustained by sufficient evidence. We do not sustain the assignments.

Defendant also assigned that: "The court erred in permitting the introduction of many pieces of evidence which were either incompetent or irrelevant, or for which there had not been proper or sufficient foundation laid." That assignment is disposed of without further discussion by Pulliam v. State, 167 Neb. 614, 94 N. W. 2d 51.

Defendant also assigned that: "The court erred in instructing the jury on vital issues to be resolved by said jury." However, such purported assignment is so indefinite and incomprehensible that this court will not search the record and attempt to discuss or answer it directly.

Section 28-543, R. R. S. 1943, upon which the information was predicated, provides, as far as important here, that: "If any officer * * * charged with the collection, receipt, safekeeping, transfer or disbursement of the public money, or any part thereof, belonging to the state or to any county or precinct * * * in this state, shall convert to his own use, or the use of any other person * * * in any way whatever, * * * any portion of the public money * * * received, controlled or held by him for safekeeping, transfer or disbursement, * . * * every such act shall be deemed and held in law to be an embezzlement of so much of such moneys * * * as shall be thus converted, * * * which is hereby declared to be a high crime. Such officer * * * shall be imprisoned in the penitentiary not less than one year nor more than twenty-one years, according to the magnitude of the embezzlement, and also pay a fine equal to double the amount of money * * * so embezzled, which fine shall operate as a judgment at law * * * and shall be enforced to collection by execution or other process for the use only of the party or parties whose money or other funds * * * of any kind as aforesaid have been

so embezzled. In all cases, such fine so operating as a judgment shall only be released or entered as satisfied by the party in interest as aforesaid." The remaining portion of section 28-543, R. R. S. 1943, relates solely to recited conditions and situations of failure or refusal of a public official to pay over any public money or make settlement thereof within a reasonable time after notice or demand, which "shall be held and taken as prima facie evidence of such embezzlement." In that respect, such provisions are generally held to be evidentiary in character for protection of the public and are generally held not to be necessary elements of the offenses required to be alleged or proved by the state. See 29 C. J. S., Embezzlement, § 11, p. 686, citing authorities from this and other jurisdictions.

Defendant first argued that Count VI of the information was defective because it charged that defendant had converted to his own use and embezzled a specified sum of money between two dates, to wit, February 1, 1956, and May 31, 1958, during defendant's term of office. That contention has no merit because it is entirely answered and refuted by Bolln v. State, 51 Neb. 581, 71 N. W. 444, and Heilman v. State, 109 Neb. 15, 189 N. W. 303. See, also, Canada v. Jones, 170 F. 2d 606.

Thereafter, defendant argued that the information was defective because it did not charge defendant with intent to defraud the State of Nebraska or Buffalo County, which was an essential element of the crimes, and that instruction No. 13, given by the trial court, erroneously told the jury in part that: "An intent to convert the money involved to his own use is a necessary element of the crimes charged against the defendant. It is not necessary in a prosecution under the Statute quoted in Instruction No. 2 to prove an intent to defraud in committing the act charged, yet it is necessary to prove an actual knowledge on the part of the one charged thereunder that the act which he is

charged with having committed was committed without authority of law and was wrongful." In that connection, each count of the information alleged among other things that defendant, Robert L. Haines, "did then and there unlawfully and feloniously and fraudulently convert the same to his own use and embezzle of said public money, * * * arising from fines under the general laws of the State of Nebraska, which belong to said County of Buffalo, to be appropriated exclusively to the use and support of the common schools in Buffalo County * * *." It is thereby evident that if intent to defraud were an essential element of the crimes sought to be alleged under section 28-543, R. R. S. 1943, the allegations of the information were more than adequate.

In that connection, we have consistently held that: "Where a statute states the elements of a crime, it is generally sufficient, in an information or indictment, to describe such crime in the language of the statute.

"If the information or indictment apprises the defendant with reasonable certainty of the accusation against him so that he may prepare his defense and plead the judgment as a bar to a subsequent prosecution for the same offense, it meets the fundamental purposes of an information or indictment, as well as constitutional requirements." Liakas v. State, 161 Neb. 130, 72 N. W. 2d 677. See, also, Sedlacek v. State, 147 Neb. 834, 25 N. W. 2d 533, 169 A. L. R. 868.

In that connection, defendant relies upon Davis v. State, 121 Neb. 399, 237 N. W. 297, in arguing that intent to defraud was an essential element of the crimes charged against defendant. In that case, it was charged that defendant, as vice president of a bank, had embezzled private money of the bank under the provisions of section 28-547, R. R. S. 1943, which by its language specifically makes intent to defraud by bank officers an essential element of the crime of embezzlement. On the other hand, section 28-543, R. R. S. 1943, which re-

lates to embezzlement by public officers, does not do so.

As stated in 18 Am. Jur., Embezzlement, § 40, p. 597, citing authorities: "If a statute makes it a felony for a public officer knowingly and unlawfully to appropriate to his own use or to the use of any other person money received by him in his official capacity, it is not necessary, to constitute the offense of embezzlement, that there be an intent to appropriate the money so as forever to exclude the rightful owner from its use and possession. The purpose of the statute is to prevent any public official from using the money or property coming to him in his official capacity for any purpose other than the one for which the money or property was intrusted to him."

In People v. Warren, 122 Mich. 504, 81 N. W. 360, 80 Am. S. R. 582, which involved the interpretation and application of a comparable statute, the court said: "The intention of the statute was to prevent any public official from using money or property coming to him in his official capacity for any other purpose than the purpose for which it came to him. If he does knowingly use it, or permit others to do so, for other purposes than the one for which it was intrusted to him, then he comes within the provisions of the statute."

As stated in 29 C. J. S., Embezzlement, § 12, p. 687, citing authorities: "* * * under some statutes, especially those relating to the embezzlement of public funds, the offense consists in the violation of the statute and not the intent or motive by which the accused is actuated, * * *." See, also, § 35, p. 718.

We conclude that the crime of converting to his own use and embezzlement by a public officer under the provisions of section 28-543, R. R. S. 1943, was meant to prevent any public officer from converting to his own use or using any public money received by him in his official capacity for any purpose other than the one for which the money was entrusted to him, and that the offense consists in such violation of the statute, whether

or not the public official fraudulently intended to do so.

In the case at bar, the trial court properly instructed the jury, in connection with each of the six separate counts and indicated in instruction No. 13 as well, that in order to warrant conviction of defendant, the burden was on the State to prove, among other elements, beyond reasonable doubt that defendant "intentionally converted said money to his own use." Defendant's contentions have no merit.

We turn then to defendant's assignment that the trial court erred in admitting certain evidence relating to a possible violation of other laws not connected with the issues in the case, and in permitting the county attorney to make prejudicial statements with relation thereto. We conclude that such assignment is without merit.

At the beginning of the trial, defendant moved for a mistrial for the reason that: "* * * the county attorney in his opening statement covered material broader than is alleged in said complaint," which contains nothing about "the repayment of any funds at all." Of course, the fundamental issue was the alleged conversion to his own use and embezzlement by defendant of public funds, and as heretofore observed, failure to pay over such funds within a reasonable time after notice or demand was not an element necessary to be alleged in the information or to be proved by the State, if the evidence adduced was otherwise sufficient to establish that defendant had converted public money to his own use, as provided by section 28-543, R. R. S. 1943.

Also, defendant's motion aforesaid did not then call the trial court's attention to or object to any particular statement made by the county attorney, and being so indefinite and unintelligible, it was properly overruled. In that connection, counsel for defendant made no further objection to any purported statement of the county attorney until after the State had rested. At that time, defendant renewed his motion for "a mistrial for the

reason that certain evidence is before the jury that is highly prejudicial to the rights of the defendant * * *." He then offered in evidence the entire "opening statement of * * * County Attorney * * * as to certain matters that were to be proven in this case." Defendant's motion was overruled, whereupon defendant's counsel said, referring to the county attorney's opening statement: "It's not offered as an exhibit." Thus, the exhibit was not admitted. Thereupon, defendant's counsel offered to prove that the county attorney said in his opening statement that: " 'The evidence will show that there was insufficient money in his trust account; that the check bounced,' " which defendant now argues prejudicially related to a possible violation of other laws not connected with the issues in the case. The State objected, and the offer was refused upon the ground that it was incompetent, irrelevant, immaterial, out of time, and not then proper to be received.

In such respect, it is now elementary that ordinarily, when error is predicated upon the claim that counsel in addressing the jury prejudicially abused his privilege, the objectionable remarks, in order to be available on appeal, must have been properly objected to at the time they were made or at the conclusion of counsel's statement or argument, and an adverse ruling had thereon before submission to the jury. See Sandomierski v. Fixemer, 163 Neb. 716, 81 N. W. 2d 142, and authorities cited therein.

It cannot be said that defendant objected in any specific or proper manner at the time the alleged statement was made or thereafter so that the trial court could possibly know what defendant was complaining about. It is also elementary that a prosecutor, in argument to the jury, may state proper conclusions which are predicated upon competent evidence which will be or has been adduced, and unless an error in argument complained of was prejudicial to the rights of defendant, the judgment should not be reversed. See

Grandsinger v. State, 161 Neb. 419, 73 N. W. 2d 632, and authorities cited. In that connection, also, the trial court instructed the jury that it "should be governed solely by the evidence introduced" and not "by statements of counsel not supported by the evidence." Balis v. State, 137 Neb. 835, 291 N. W. 477, relied upon by defendant herein, is entirely distinguishable from the case at bar.

The evidence objected to by defendant was primarily that of a bank cashier who testified as a witness for the State that defendant's check for $3,200, dated February 10, 1958, by which he sought to pay $3,100 in fines to the county, was not paid when first presented to the bank by the county treasurer for payment because "there wasn't sufficient funds to pay it" so "later that morning" defendant deposited "Ten hundred and sixty dollars" in his "R. L. Haines, Trust Account" and the check was subsequently paid on February 11, 1958. There is evidence also that $780 of the money so deposited by defendant had been borrowed for that purpose. That was the evidence, together with that of the county treasurer and the person from whom the $780 was borrowed by defendant, upon which the county attorney had predicated his opening statement about which defendant complains.

Assuming, as the State has done, that the county attorney made the statement about which defendant complains, we are unable in the light of the foregoing evidence and authorities, to say that the county attorney's opening statement or that the evidence aforesaid relating thereto showed a violation of other laws not connected with the issues in the case which could in any manner have been prejudicial to defendant. The facts sought to be shown and which were properly shown by the aforesaid evidence as well, were that fines collected by defendant which should have been in his trust account in his bank, or otherwise securely available or in his possession so they could be paid

over to the county treasurer by defendant, as required by law, were not on deposit in defendant's trust account at the bank or securely available or in his possession. It was simply circumstantial evidence of the unlawful use of such funds by defendant, and a part of the alleged offense.

Finally, we turn to defendant's assignment that the verdict was not sustained by sufficient evidence. We do not sustain that assignment.

The evidence adduced is so voluminous that we can only summarize relevant and material portions thereof, bearing in mind the rule that: "It is not the province of this court to resolve conflicts in the evidence in law actions, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Those matters are for the jury.

"In a criminal case, this court will not interfere with a verdict of guilty based upon the evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." Spreitzer v. State, 155 Neb. 70, 50 N. W. 2d 516.

As we view it, there is ample competent evidence in this record to establish and support the following: Defendant was admittedly a duly elected and qualified justice of the peace of Buffalo County from January 1955 until he resigned August 25, 1958. He was a lawyer who had previously served two full terms as county attorney of that county. During the time he was justice of the peace, defendant made some reports of and paid to the county treasurer some fines collected by him as such justice of the peace. On February 8, 1956, he reported receipts in the amount of $3,963, and paid that amount to the county treasurer for fines collected for the year 1955. Thereafter, on February 10, 1958, defendant made a report of fines collected during 1956 and 1957 in the amount of $3,100 which he paid to the county treasurer on February 11, 1958, by a check for

$3,200, which we have heretofore mentioned, and on that same date, the county treasurer remitted to defendant a purported extra $100. On February 22, 1958, defendant reported and paid to the county treasurer fines collected during January 1958, in the amount of $50. On March 19, 1958, defendant made his report to the county treasurer by mail, indicating that his docket reflected no criminal filings for February 1958. On July 7, 1958, because of discrepancies found by auditors, defendant reported and paid $200 as additional fines collected by him during 1956. Also, on December 6, 1958, defendant made an additional report and paid $40 as fines collected by him. In that connection, we should bear in mind that defendant's shortages were discovered when an audit was made during the summer of 1958 by the Auditor of Public Accounts, as requested by the Buffalo County board; that defendant was then notified that discrepancies had been discovered; that on August 25, 1958, one of the auditors asked defendant, "where is the money"; and that thereafter the original information was filed against defendant on September 26, 1958.

In support of Count I, the State's evidence discloses that on January 26, 1956, defendant fined a named person $100. Such person was then unable to pay the fine, so he was committed to the county jail. Thereafter, $57 of such fine was paid to the county sheriff, who paid that amount to defendant by check dated February 14, 1956. However, such sum so received by defendant was not reported or paid to the county treasurer by defendant, as required by law.

In support of Count II, the State's evidence discloses that on January 26, 1956, defendant fined a named person $100. Such person was then unable to pay the fine, so he was committed to the county jail. Thereafter, $45 of such fine was paid to the county sheriff, who paid that amount to defendant by check dated February 14, 1956. However, such sum so received by defendant was not re-

ported or paid to the county treasurer by defendant, as required by law.

In support of Count III, the State's evidence discloses that on March 2, 1956, defendant fined a named person $100. Such person was then unable to pay the fine, so he was committed to the county jail. Thereafter, $90 of such fine was paid to the county sheriff, who paid that amount to defendant by check dated March 26, 1956. However, such sum so received by defendant was not reported or paid to the county treasurer by defendant, as required by law.

In support of Count IV, the State's evidence discloses that on July 13, 1956, defendant fined a named person $15 and costs. Such person was then unable to pay the fine and costs, so he was committed to the county jail. Thereafter, on that day or the next such person paid $20 on his fine and costs to the sheriff, who paid that amount to defendant by check dated July 14, 1956. However, no part of such sum so received by defendant was reported or paid to the county treasurer by defendant, as required by law.

In support of Count V, the State's evidence discloses that on May 31, 1957, defendant fined a named person $20 and costs, who thereupon paid that amount to defendant. However, such fine so received by defendant was not reported or paid to the county treasurer, as required by law.

Count VI charged that defendant had converted to his own use and embezzled the sum of $4,618 paid to him as fines between February 1, 1956, and May 31, 1958, while serving as a justice of the peace of Buffalo County. In that connection, oral testimony of several police officers for the city of Kearney, and several Nebraska Safety Patrol officers, which testimony was supported by their daily records and reports, was properly offered and received. Such testimony and records disclosed arrests of named persons who had been fined by defendant and whose fines had been paid to defendant

either in cash at the time of hearing, or by waiver with cash fines enclosed in stamped addressed envelopes furnished by defendant and mailed to him through the United States mail, or by mail admittedly received by defendant during such period.

Also, the testimony of a state examiner and a state accountant from the office of the Auditor of Public Accounts discloses that they had traced and checked, then retraced and rechecked defendant's records, the records of the police and Nebraska Safety Patrol officers, and the county records as well with relation to the aforesaid arrests and fines imposed by defendant and received by him to determine whether such fines had been reported and paid to the county treasurer. Their testimony established that, with only one $10 exception, none of such fines thus paid to and received by defendant had ever been included in any reports or remittances made by defendant to the county treasurer, and that the amount of such fines unpaid by defendant was $305 plus $1,055, or a total of $1,360.

As requested by the county board of Buffalo County, the Auditor of Public Accounts made an audit of defendant's official accounts as justice of the peace, whereat he discovered discrepancies and reported same to the county board. Thus, on August 25, 1958, a state examiner and state accountant employed by the Auditor of Public Accounts went to defendant's office seeking to learn where the money was that defendant had not reported or paid. Thereupon, defendant reached in his desk and handed the county sheriff $460 cash for safekeeping, saying that it was his 1958 justice of the peace business. Thereafter, such sum was given to then counsel for defendant, and after November 10, 1958, all but $40 thereof, reported by defendant on December 6, 1958, as heretofore mentioned, was turned over to defendant.

Also, on August 25, 1958, defendant resigned as justice of the peace, and thereafter, on November 10, 1958, defendant paid to the county treasurer through his then

counsel the sum of $7,982, purportedly representing fines collected by defendant as justice of the peace and never theretofore reported or paid to the county treasurer. Also, on August 25, 1958, defendant orally admitted to the county attorney that he had used the fines collected by him for his own purposes. Defendant then told the county attorney that he would give a written statement that he had so used fines collected as justice of the peace, and on August 25, 1958, defendant voluntarily gave the county attorney a signed and witnessed statement which said in part that he had "used funds collected by me as Justice of the Peace of Buffalo County * * * for my own personal use, the amount of which moneys so used is not now known to me."

Likewise, on November 10, 1958, defendant filed a petition in this court, requesting and consenting to his disbarment as a lawyer in this state, alleging that he stood "charged in the District Court of Buffalo County with the misappropriation of funds which came into my hands while I was serving as Justice of the Peace in said county" and I "hereby acknowledge such charges to be true and admit that while serving as Justice of the Peace * * * I have been guilty of unprofessional conduct sufficient to warrant the revocation of my license to practice law." Further, this record discloses that acting thereon, this court disbarred defendant on November 14, 1958.

Defendant, as a witness in his own behalf, admitted that he had kept no complete records during the time he was justice of the peace; that they were in a deplorable condition; that he did not know how much money was due for fines collected by him; and that he had not and could not have personally accounted for the amount due. He admitted that he had made a report of fines due through his then counsel on November 10, 1958, which was accompanied by payment of $7,982 for such fines as he had not theretofore reported and paid to the county treasurer. However, defendant insisted

that he had never intended to steal the money.

In that connection, the report and payment of such fines to the county treasurer by defendant after the shortage and conversion thereof to his own use had been discovered and exposed would not be a defense under the provisions of section 28-543, R. R. S. 1943. See Heilman v. State, *supra*.

The State was not required to allege in the information that demand was made for payment of such fines by defendant, and that he had failed to account therefor or make settlement thereof within a reasonable time thereafter. Also, if conversion thereof was sufficiently established by other competent evidence, the State was not required to prove such demand and failure thereafter by defendant in order to support the verdict and judgment. See Bartley v. State, 53 Neb. 310, 73 N. W. 744.

Further, as recently as Olney v. State, 169 Neb. 717, 100 N. W. 2d 838, this court held: "While a voluntary confession is insufficient, standing alone, to prove that a crime has been committed, it is, nevertheless, competent evidence of that fact, and may, together with sufficient corroborative circumstances, establish the corpus delicti as well as the defendant's guilty participation."

We conclude that the verdict of the jury was amply sustained by the evidence; that defendant had an eminently fair and impartial trial; that there is no error in the record prejudicial to defendant's rights; and that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.